UNION NATIONAL BANK et al., Appellants, v. HILL et al.

Division Two, March 7, 1899.

1.  **Banks**: DUTY OF DIRECTORS. The board of directors are bound to know all that is done by the bank, beyond the merest matter of daily routine; and they are bound to know the system and rules arranged for its doing. And what they ought to know as to the general course of the bank's business, they will be presumed to have known, in a contest between the bank and third persons dealing in good faith with it.

2.  ———: ———: LOANING MORE THAN TWENTY-FIVE PER CENT OF CAPITAL: LIABILITY FOR LOSSES: WHO MAY SUE. If by the exercise of ordinary care, that is such care and diligence as a prudent man exercises in the conduct of his own affairs in view of all surrounding circumstances, the board of directors may know, then it becomes their duty to know, that more than twenty-five per cent of the bank's capital has been loaned to one individual company, and also that the borrowers were insolvent. Nor is the fact that the directors received no benefit from such loans and that their services were gratuitous, any excuse for such neglect. And for such neglect of duty, they are liable for losses sustained by the bank, by reason of such loans, in an action at law by the corporation while it is a going concern or by the assignee after assignment, or in an action in equity by the stockholders in the event of the refusal of the assignee to bring suit.

3.  ———: ———: GROSS NEGLIGENCE: COMMITTING MANAGEMENT TO CASHIER. It is gross negligence on the part of the directors to leave the entire management of the business of a bank to the cashier.

4. ———: ———: ———: INALIENABLE DUTY. The statute of Missouri (R. S. 1889, sec. 2748), imposes on the board of directors the management of the affairs and business of a bank, and these functions are inalienable, and can not be conferred upon any officer or officers.

5. ———: ———: ———: ACTION BY ASSIGNEE. An action may be maintained by an assignee of an insolvent bank for losses sustained by the bank because of the failure of the directors to exercise ordinary care and diligence in the management of its business. He succeeds to all the assets and interests of the bank, and has the same powers usually conferred on receivers.

6. ———: ———: ———: ACTION BY STOCKHOLDERS. And if the assignee refuse to sue, the stockholders, who are the real parties in interest, may maintain an action in their own names, making the corporation a defendant.

7. ———:. ———: ———: ACTION BY CREDITORS. But such action can not be maintained by those who are mere creditors of the bank.

8. ———: ———: ———: ———: CASE STATED. In this case it is held that the relation between the plaintiffs and the directors of the insolvent bank was that of debtor and creditor, and that for the mere failure of the bank directors to exercise ordinary diligence and care as such, in the management of the business affairs of the bank, by reason of which the bank becomes insolvent, they can not be held responsible at the suit of the general creditors.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

LESLIE OREAR, A. F. RECTOR, DAN V. HERIDER, E. S. HERIDER, F. M. BLACK, NATHAN FRANK, C. W. BATES, I. N. WATSON and JOHN W. BEEBE for appellants.

(1)   A statute prescribing the duties of directors, though it declares no penalty, imposes a duty upon them, and a negligent or willful failure to perform such statutory duty lays the foundation for an action. 3 Thompson on Corps., sec. 4104; Briggs v. Spaulding, 141 U. S. 152; Thompson v. Greeley, 107 Mo. 577; Thompson v. Swain, 107 Mo. 594;

R. S. 1889, sec. 2758. (2) Directors of banks must exercise at least ordinary care and prudence in the administration of the affairs of the bank, and they are liable for the want of such care in the discharge of their duties, whether such duties arise from custom and usage or from some statute law. When directors delegate the performance of their duties to inferior officers, they become liable for the wrongful and negligent acts of such inferior officers. If they leave the custody and control of the banks' affairs to a subordinate officer, they are guilty of a breach of trust; and they thereby make the acts of such subordinate officer their own acts, and this, too, no matter how high the reputation of such officer may be. Thompson on Corps., sec. 4108; Sparing's Appeal, 71 Pa. St. 11; Wallace v. Bank, 89 Tenn. 630; Briggs v. Spaulding, 141 U. S. 132; Martin v. Webb, 110 U. S. 15; Hun v. Carey, 82 N. Y. 65; Marshall v. Bank, 85 Va. 676; Bank v. Caperton, 87 Ky. 306; Williams v. McKay, 40 N. J. Eq. 189; Delano v. Case, 121 Ill. 247; Thompson v. Greeley, 107 Mo. 577; Ackerman v. Halsey, 37 N. J. Eq. 356; Williams v. McKay, 46 N. J. Eq. 25; Nat. Bank v. Lovering, 82 Ky. 370; Gibbons v. Anderson, 80 Fed. Rep. 345; Houston v. Thornton, 29 S. E. Rep. 827; Seale v. Baker, 70 Tex. 283. (3) Primarily the right of action against directors for a negligent abuse of the duties imposed upon them, resides in the corporation. But if the corporation refuses to bring the suit, then the stockholders of a going concern may sue in equity. Thompson on Corps., secs. 4479 and 4132; Ang. & Ames on Corp. (2 Ed.), sec. 312; Pom. Eq. Jur., sec. 1095; Slattery v. St. Louis Trans. Co., 91 Mo. 217; Thompson v. Greeley, 107 Mo. 577. (4) The liability of the directors of an insolvent corporation is an asset, and if the assignee refuses to sue, the creditors may sue in a court of equity. This is well settled law. Ackerman v. Halsey, 37 N. J. Eq. 356; Halsey v. Ackerman, 38 N. J. Eq. 508; Bank v. Hopkins, 111 Pa. St. 328; Bank v. Caperton, 87 Ky.

306; Marshall v. Bank, 85 Va. 676; Brinkerhof v. Bostwick, 88 N. Y. 59; Green's Brice's Ultra Vires, 478, 484 and 485; Foster v. Bank, 89 Fed. Rep. 504; Bank v. Barrier, 3 Fed. Rep. 817. (5) The right of these plaintiffs to recover the dividends paid can stand on section 2755 of the statutes. (6) That plaintiffs have the right to maintain this action is shown by the following authorities: Maisch v. Savings Funds, 5 Phila. 30; Bank v. St. John, 25 Ala. 566; Morawetz on Priv. Corps., sec. 495; Miese v. Loren, 5 Ohio N. P. 307; Rouse v. Bank, 46 Ohio St. 493; Pomeroy's Eq. Jur., sec. 1095; Ackerman v. Halsey, 37 N. J. Eq. 356; Warner v. Hopkins, 111 Pa. St. 328; 3 Thompson, Corps., secs. 4122 and 4123.

THOS. SHACKELFORD, DAVIS & DUGGINS, JOHN A. RICH, S. B. BURKS, W. M. WILLIAMS and JOHNSON & LUCAS for respondents.

(1) Plaintiffs can not maintain this action. The pleadings and evidence in the case show that they have no right of recovery. The creditors of a corporation can not sue the directors thereof on the sole ground that the latter were negligent in the management of its affairs, and that loss resulted to the corporation therefrom. The directors are liable to their principal for the nonperformance of their duties. A creditor can not sue an agent of his debtor for neglect in his duties as agent, whereby the estate of the principal was reduced, and the assets, to which the creditor might look for the payment of his debt, thereby lessened. Deadrick v. Bank, 45 S. W. Rep. 786; Landis v. Sea Island, Hotel Co., 31 Atl. Rep. 755; Frost Manufacturing Co. v. Foster, 41 N. W. Rep. 212; 3 Thompson on Corp., secs. 4091, 4137 and 4138; Dykman v. Keeney, 28 N. E. Rep. 894; Kraft Holmes Grocer Co. v. Crow, 36 Mo. App. 297; 1 Am. and Eng. Ency. of Law (2 Ed.) 1131; Mechem Agency, sec. 539. (2) There is no evidence tending to

show that the loans were made with the knowledge or consent of any of the defendants, or that they in any manner participated therein.    The proof does not support the allegations of the petition that defendants "knowingly and negligently" permitted such loans.    Proof of knowledge on the part of the directors that such loans were made is essential to make out a case.    Clews v. Bardon, 36 Fed. Rep. 617; Morins v. Lee, 30 Fed. Rep. 298; Witters v. Sowles, 31 Fed. Rep. 1; Dunn's Adm'r v. Kyle, 14 Bush 134; Caperton's case, 8 S. W. Rep. 885; Tradesman Pub. Co. v. Knoxville Car Wheel Co., 32 S. W. Rep. 1097; 1 Morawetz on Corp. (2 Ed.), sec. 555; Thompson v. Greeley, 107 Mo. 577; Thompson v. Swain, 107 Mo. 594; Hedges v. New England Screw Co., 53 Am. Dec. 630.    (3)    The second ground relied upon by appellants is that dividends were improperly declared when the bank was insolvent.    The statute gives a remedy to the creditor to recover payments so made. R. S. 1889, sec. 2755.    This suit was brought in the right of the bank.    The prayer of the petition is that the money sought to be recovered be paid to the assignee as part of the estate transferred to him by the deed of assignment.    The case must be passed upon in this court on the same theory upon which it is presented in the pleadings, and was tried in the lower court.    Parties can not shift their positions after the case reaches this tribunal.    Owens v. Walker, 79 Mo. 563.    (4)    The directors were not insurers of the fact that the bank was in condition to justify the declaration of dividends.    They acted in good faith, and upon reports made to them, which showed that the assets of the company justified the payment.    They were not bound to know everything that could have been ascertained from a critical examination of the books of the bank.    They were entitled to rely upon the reports made to them by the proper officers, in the absence of any suspicion, or reason to suspect their incorrectness. 1 Morawetz on Corp. (2 Ed.), sec. 571; 1 Cook on Stock

and Stockholders (3 Ed.), sec. 157; Caperton's case, 8 S. W. Rep. 885; Swentzel v. Penn. Bank, 30 Am. St. Rep. 718; Wallace v. Lincoln Sav. Bank, 15 S. W. Rep. 448.   (5) The defendants are not chargeable with knowledge of all that was contained in the books of the bank, nor can they be denounced as negligent for a failure to know everything that might have been ascertained by a critical examination of said books. Swentzel v. Bank, 147 Pa. St. 140; Bank v. Caperton, 8 S. W. Rep. 885; Wallace v. Bank, 15 S. W. Rep. 448; Dunn v. Kyle, 14 Bush. 134; In re Denham, 25 Ch. Div. 582; Briggs v. Spaulding, 141 U. S. 132; North Hudson Mutual Building & Loan Ass'n v. Childs, 82 Wis. 460; Warner v. Penoyer, 82 Fed. Rep. 181.

BURGESS, J.—On the seventeenth day of October, 1894, the Citizens Stock Bank of Slater, Missouri, having become insolvent, made an assignment to defendant Com. P. Storts for the benefit of its creditors, and the plaintiffs whose demands were allowed by the assignee prosecute this suit against the bank, the assignee, and the administrator of the estate of Joseph Field, deceased, who was cashier, and against Fields' estate and the other defendant directors, upon the alleged ground that the insolvency of the bank was brought about by their neglect and mismanagement.

After a demand upon and a refusal by the assignee to institute suit, this suit was brought by plaintiffs.

There was judgment for defendants in the trial court and the case is here on plaintiffs' appeal for review.

The Citizens Stock Bank was organized under the laws of this State on the first day of September, 1882, with a' capital stock of $30,000.   On the seventh day of November, 1887, the capital stock was increased to $100,000, and the bank made an assignment on December 17, 1894, for the benefit of its creditors.

Vol. 148 mo—25

The petition charges the defendants with negligence in failing to take any part in the management of the affairs of the bank, in turning the management of the business thereof over to Joseph Field, the cashier, during the existence of the bank, in making loans to various persons and firms when they were insolvent, and in making to each of certain named persons, firms and corporations loans in excess of twenty-five per cent of the capital stock of the bank, by reason of all which, said sums of money so loaned were lost and said bank became insolvent.

The plaintiffs sue for themselves and all other persons similarly situated.

The total amount of the assets which came into the hands of the assignee, including real estate, furniture, cash and cash items, sums due from other banks, overdrafts, notes less credits—fifty shares of stock in the St. Louis National Bank (which was held by the Chemical Bank of St. Louis as collateral security and was worth $5,000), and notes held by other banks and persons as collateral security, at face value amounted to $673,339.22.

There were also other notes held as collateral by other banks which were not included in the inventory. The claims allowed by the assignee amount to $554,592.32, aside from $10,000 or $12,000 of other unadjusted demands.

The assignee after diligent effort to collect the money due the bank up to the time of the trial, had only been able to collect some $45,000 or $46,000, not including some $18,000 adjusted by way of offsets, and had paid a dividend of three per cent only. His evidence was to the effect that a very large portion of the notes which came into his possession are worthless, because of the insolvency of the persons liable thereon, and that most of the notes held by other banks and individuals are of no value for like reason.

On the seventh day of November, 1887, the defendant directors increased the stock of the bank from $30,000 to·

$100,000, and in doing so caused an alleged surplus of $30,000 to be applied in payment of new stock issued to the existing stockholders, when in fact there were no surplus earnings on hand.

At the time the capital stock of the bank was increased the Mead Mercantile Company was indebted to the bank on notes $42,155, and overdrafts $2,261.21, making in all $44,420.21, which was more than the entire capital stock before the increase, and more than twenty-five per cent after the increase. The indebtedness of this company continued to be greatly in excess of twenty-five per cent of the capital stock of the bank up to the date of the assignment, when it amounted to $84,825.98. Only a small portion of this indebtedness was ever secured.

At the time the capital stock of the bank was increased the firm of Storts & Eubanks owed the bank $37,380.99, which was more than its capital stock before the increase, and more than twenty-five per cent after the increase. This indebtedness continued to increase up to June, 1892, when it amounted to $117,294, more than the amount of the capital stock. This firm failed in business on the last named date. For this money the bank never had any security. The members of the firm are the sons of two of the directors of the bank. In addition to the amount owing by this firm, one of its members, W. B. Storts, at the time of the assignment by the bank, owed it on his personal account the sum of $53,103.52, for borrowed money, from time to time for the last two years next preceding the assignment, for which the bank had no security, and the loss was a total one.

The indebtedness of one Joseph Baker to the bank in June, 1892, exceeded twenty-five per cent of its capital stock and so continued up to the time of the assignment when it amounted to $67,709.41. For this indebtedness the bank never had any security.

In addition to the above the indebtedness of the firm of

B. P. Storts & Company, of which firm Joseph Field, the bank's cashier, was a member, and of Joseph Field amounted to $67,979, upon which there was a loss to the bank of not less than $40,000, to $50,000.

While the books of the bank show that the notes of these parties were discounted and the proceeds placed to their respective credit, there is nothing on the books in many instances to show when and for what time the discounted notes were renewed. It is the same with respect to many other notes held by other banks as collateral security. Of the $629,000 and over, of notes shown by the inventory to be in the hands of the assignee and in the hands of other banks and other persons as collateral security, $307,355.38 do not appear to have gone through the bank, that is to say, they do not appear upon the books of the bank; and $286,055.85, in notes which were discounted and do not appear by the books to have been paid, are not found in the inventory either as in the possession of the assignee or in possession of other banks as collateral security. It is probable that in the $307,355.38 there are renewal notes to the amount of $286,055.85.

It may be stated that the bank kept no separate account of bills payable. It seems to have been the custom of Field, the cashier, in borrowing money from other banks, to make a note signed by him as cashier, and secure the same by notes held by his bank, but the books of his bank contain no record of the notes turned over as collateral security. The information as to notes held by other banks comes from the correspondence turned over to the assignee.

On September 1, 1882, the incorporators of the bank met and adopted the following by-laws:

"1st. The officers of this bank shall be a president, vice-president, a secretary, a cashier and an assistant cashier. The offices of secretary and cashier may both be filled by the same person.

"2d. The board of directors shall appoint such clerks as they may think necessary, regulate the salaries of all officers and clerks, determine the amount of dividend to be paid, the time and number of payments of dividends, and guard the interests of the bank.

"3d. The cashier shall be general manager of the business of the bank, and have supervision over it in all of its details. He shall have full power and authority to create indebtedness against the bank, to sign all issues of indebtedness and make indorsements for the bank and receive and receipt for and pay out money for the bank; to appoint clerks, subject to the confirmation of the board, and prescribe their duties."

Joseph Field was elected cashier of the bank at the time of its organization and continued in that capacity to the time of the assignment. The directors met about once a year, but having implicit confidence in the integrity and business capacity of the cashier, they paid no attention whatever to the business of the bank, but left it entirely to him. Several of them had large deposits in it at the time it closed its doors.

The defendant Com. P. Storts, assignee, is a son of the defendant Perry C. Storts, and was clerk in the bank prior to and at the time of the assignment.

There were other losses sustained by the bank which it is not thought necessary to set forth specifically, as those already stated are sufficient to a decision of the case.

The board of directors of a bank have a general superintendence over and the management of all its business affairs and transactions which ordinarily vest with it; and it has been said that, "they are bound to know all that is done, beyond the merest matter of daily routine; and that they are bound to know the system and rules arranged for its doing." [Morse on Banks and Banking (3 Ed.), sec. 116.] And what they ought to know as to the general course of the bank's business, they will

be presumed to have known, in a contest between the bank and third persons dealing in good faith with it.   They must also use ordinary care and diligence to know the conduct of their subordinate officers, as well as what the bank books show, and carefully observe the law under which the bank is organized.

The duties of the defendant directors being thus outlined, the questions are, Did they fail to exercise ordinary care in the discharge of their duties by reason of which the bank became insolvent; and if so, can the plaintiffs who are only creditors maintain this action?   Of these in their order.

Section 2758, Revised Statutes 1889, provides that "No corporation organized under this article, or heretofore organized under a general or special law of this State, shall loan its money to any individual, corporation or company, directly or indirectly, or permit any individual, corporation or company to become at any time indebted to it in a sum exceeding twenty-five per cent of its capital stock actually paid in, or permit a line of loans to any greater amount to any individual or corporation."

The bank not only loaned moneys to the Mead Mercantile Company, Storts & Eubanks, Josiah Baker and B. P. Storts & Company in excess of twenty-five per cent of its capital stock, thereby violating the statute, but it made many of these loans without security when the parties were insolvent, when by the exercise of ordinary care, that is, such care and diligence as a prudent man exercises in the conduct of his own affairs in view of all the surrounding circumstances, the board of directors might have known, as it was their duty to know, that the loans were in excess of the limit prescribed by statute, as well, also, as of the insolvency of the parties borrowing.   [Thompson on Corporations, secs. 4104, 4108; Spering's Appeal, 71 Pa. St. 11; Briggs v. Spaulding, 141 U. S. 132.]

In Martin v. Webb, 110 U. S. 15, in speaking of the duties of the directors of a bank it is said: "Directors can not, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank, and to make declarations of dividends. That which they ought by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

In the case of Marshall v. F. & M. Savings Bank, 85 Va. 678, it was held that bank directors hold to stockholders, depositors and creditors the relation of trustees to *cestuis que trust* and as such are personally responsible for frauds and loans resulting from negligence and inattention to their duties, even though they be not guilty of bad faith and are ignorant of the affairs of the bank. The same rule is announced in Savings Bank v. Caperton, 87 Ky. 306; Williams v. McKay, 40 N. J. Eq. 189; Delano v. Case, 121 Ill. 247; Seale v. Baker, 70 Tex. 283.

Hun v. Cary, 82 N. Y. 71, was a suit brought by the receiver of a savings bank against directors to recover damages because of misconduct in the management of the affairs of the bank, and EARL, J., in speaking of the duties which the directors owed to the bank and to its depositors said: "Few persons would be willing to deposit money in savings banks, or to take stock in corporations, with the understanding that the trustees or directors were bound only to exercise slight care, such as inattentive persons would give to their own business, in the management of the large and important interests committed to their hands. When one deposits money in a savings

bank, or takes stock in a corporation, thus divesting himself of the immediate control of his property, he expects and has the right to expect that the trustees or directors, who are chosen to take his place in the management and control of his property, will exercise ordinary care and prudence in the trusts committed to them—the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs. When one voluntarily takes the position of trustee or director of a corporation, good faith, exact justice, and public policy unite in requiring of him such degree of care and prudence, and it is a gross breach of duty— *crassa negligentia*—not to bestow them."

It would therefore seem that the defendant directors were remiss in the discharge of their duties in not knowing, when it was their duty to know, that loans were being made by the bank in violation of the statute, and to persons in amounts larger than its capital. Indeed the case made out by plaintiffs is one of the most absolute and unqualified inattention and neglect by the directors.

And while it is not pretended that they misappropriated any of the funds of the bank, or that they were guilty of any fraudulent conduct, they were guilty of gross neglect in leaving the entire management of the business of the bank to the cashier. And it is no excuse for the want of diligence to say that they had no benefit from it, and that their services were gratuitous, when by the exercise of ordinary care they could have prevented the disastrous consequences which flowed from the want of such care.

The defendant bank was doing business under article 7, chapter 42, Revised Statutes 1889, and by section 2748, of the statutes which is to be found in that article it is provided that the affairs and business of such corporations shall be managed by a board of directors or managers, thus imposing upon them functions which are inalienable, and which they could not confer upon any officer or officers. "Thus the

making of discounts is an inalienable function of the directors. They can not part with it, or invest any officer or officers with it. It rests in them alone and exclusively. It is a power of that degree of vital importance that it can not be taken out of the policy of the general principle that powers of a public nature, given by the legislature, can not be subdelegated. The legislature imposes upon the board the duty of taking charge of all those matters of business upon the wise and skillful conduct of which the prosperity of the institution and the safety of persons dealing with it depend. This duty they can not shift in whole or in part upon others, and it covers no department of banking business more unquestionably than the making of loans and discounts." [Morse on Banks and Banking (3 Ed.), sec. 117; Gibbons v. Anderson, 80 Fed. Rep. 345; 3 Thompson, Corp., secs. 4108, 4109; 1 Morawetz, Priv. Corp., secs. 552, 556; Spering's Appeal, 71 Pa. St. 11.]

The directors having been guilty of negligence in the discharge of their duties by reason of which losses were sustained by the bank, they were liable in an action at law to the corporation while a going concern for losses due to such loans, or to the assignee after the assignment, or in equity to the stockholders, in the event of the declination of the assignee to bring suit.

Thompson v. Greeley, 107 Mo. 577, was an action by the receiver of an insolvent savings bank against its directors, for losses sustained by the bank by reason of its having loaned its moneys in violation of the statute, and it was held that the directors were liable at the suit of the corporation for the losses to the corporate assets thereby sustained. [Citing Bent v. Priest, 86 Mo. 482; Slattery v. Transfer Co., 91 Mo. 217; Ward v. Davidson, 89 Mo. 445; Hodges v. Screw Co., 1 R. I. 312; Smith v. Hurd, 12 Metc. 371; Attorney-Genl. v. Ins. Co., 2 John. Ch. 371; Thompson on Liability of Officers, 376; Cogswell v. Bull, 39 Cal. 320;

Ins. Co. v. Jenkins, 3 Wend. 130; Hun v. Cary, 82 N. Y. 70; Mining Co. v. Ryan, 42 Minn. 198. It was ruled in that case that a receiver of an insolvent corporation succeeds to the title of the property and rights of action of the corporation, when so invested by statute, or by the decree of the court appointing him, and is the proper party to a suit to enforce them by legal proceedings. It was said: "If a right of action against these directors existed in favor of the corporation, this action is properly prosecuted in the name of the receiver." [Alexander v. Relfe, 74 Mo. 516; Gill v. Balis, 72 Mo. 429; High on Receivers, sec. 316; Thompson on Liability of Officers, etc., 377, and authorities cited; Morse on Banks and Banking, sec. 129; Hun v. Cary, *supra*.] If then an action can be maintained by a receiver of an insolvent bank against its directors for losses sustained by the bank because of their failure to exercise ordinary care and diligence in the management of the business of the bank, for like reason an assignee may do so, because by reason of the assignment he succeeds to all interests and assets of the bank. So it has been held that if the assignee refuse to sue, the stockholders, who are the real parties in interest, may maintain an action in their own names, making the corporation a defendant. [Brincker-hoff v. Bostwick, 88 N. Y. 52; Greaves v. Gouge, 69 N. Y. 154; Seale v. Baker, 70 Tex. 283; Savings Bank of Louisville v. Caperton, 87 Ky. 306.]

And shareholders and creditors will be permitted to sue in similar circumstances. [Wallace v. Lincoln Savings Bank, 89 Tenn. 630; Marshall v. F. & M. Savings Bank, 85 Va. 676; Halsey v. Ackerman, 38 N. J. Eq. 508; Ackerman v. Halsey, 37 N. J. Eq. 356.] In each of these cases the person or persons suing were either stockholders or stockholders and creditors, and the fact that they were stockholders was chiefly relied upon for a recovery, so that they are not authority for the contention that persons who are creditors only may maintain such an action against the directors of an insolvent bank.

Warner v. Hopkins, 111 Pa. St. 332, was an action by
the creditors of an insolvent bank against its directors and as-
signee to charge the directors for losses sustained by the bank
by reason of their mismanagement to such an extent as to
render it insolvent and it was held that the action might be
maintained. The court said: "Had the creditors the right
to file a bill? Of this we entertain no doubt. It was held in
Watt's Appeal, 28 P. F. S. 370, that the shareholders are
entitled to proceed by bill against the directors of a corpora-
tion for mismanagement of its affairs. [Citing Spering's
Appeal, 21 P. F. S. 24, and Gavenstine's Appeal, 13 Wr.
310.] It is settled by numerous cases that the creditors have
the same right."

So in Trustees Mut. Building Fund v. Bosseiux, 3 Fed.
Rep. 817, it was held that the directors of an insolvent cor-
poration might be sued by one or more of its creditors for
losses sustained by the bank by reason of their negligence.

In Foster v. Bank of Abington, 88 Fed. Rep. 604, plain-
tiffs who were depositors in the Bank of Abington sued the
bank, and its directors for themselves and all other creditors
who might come in and be made parties plaintiffs for losses
sustained by the bank for reason of their negligence so as to
render it insolvent, and upon demurrer to the petition it was
held that " the general relation of the bank to a depositor is
that of debtor and creditor" (citing St. Louis v. Johnson,
5 Dill, 241) and that plaintiffs might maintain the action.

Delano v. Case, 121 Ill. 247, was a suit by a general
depositor in a bank, against its directors, for negligence in
permitting it to be held out to the public as solvent, when in
fact it was at the time insolvent, by reason of which he sus-
tained damages, and it was held that he might prosecute the
action. [See, also, 3 Thompson Com. on Corporations, sec.
4123; Maisch v. Savings Fund, 5 Phil. 30.]

These decisions all seem to proceed upon the theory that
the directors of a banking corporation and its creditors oc-
cupy towards each other the relation of trustee and *cestui que*

*trust*, but we are not prepared to adopt this view. "They are not express trustees, they are agents; they are trustees in the sense that every agent is a trustee for his principal and bound to exercise diligence and good faith." [Wallace v. Bank, 89 Tenn. 649.] The relation of the creditors towards the corporation "is that of contract and not of trust." [Chief Justice FULLER in Briggs v. Spaulding, 141 U. S. 132.]

In Deaderick v. Bank of Commerce, 100 Tenn. 457, it is held that directors of a corporation are its agents, and the agents of its stockholders, but owe no duty to corporate creditors, and are not liable to such creditors, after insolvency of the corporation, for loss made possible by their neglect to properly supervise the management of its affairs. The court said: "That directors are liable in an action at law to their principal, the corporation, for losses resulting to it from their malfeasance, misfeasance, or their failure or neglect to discharge the duties imposed by their office, and, in equity, to the stockholders for these losses, the corporation declining to bring suit, is clear, upon the authorities. Though the corporation is the legal entity, yet the stockholders are interested in the operations of the corporation while in a state of activity, and, upon its dissolution, in the distribution of its property, after all debts are paid; and so its officers or agents stand in a fiduciary relation to both. But it is otherwise as to creditors. The directors of a going corporation, whether able to pay its debts or not, owe no allegiance to them. It is true that the creditors may extend credit upon the faith that the company has assets to pay its debts, and that these assets are prudently managed; yet they are strangers to the directors; they maintain no fiduciary relation with them; there is a lack of privity between the two. As was said by the Supreme Court of the United States in Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, the relation between the creditors and the corporation 'is that of contract, and not of trust;' but there is nothing, of either contract or

trust, in all ordinary cases, to create any relation between the creditor and the directors.   A creditor of a going corporation, being thus a mere stranger, we think it clear that he can no more, after the suspension of the corporation by insolvency, either in law or equity, set in motion litigation to hold its directors liable for losses attributable merely to inattention, than could the creditor of any other insolvent debtor maintain a suit against his agent under similar circumstances. In such a case as the one we are dealing with, that is, loss to the corporation resulting from mere negligence on the part of its directors, a creditor seeking to hold the directors liable for this loss, even in a suit. like this, must rest his claim upon some provision of positive law."

Landis v. Hotel Co., 53 N. J. Eq. 654, was a proceeding in equity by plaintiff, who was both a stockholder and a creditor of an insolvent corporation, to charge its directors with losses sustained by their mismanagement.   The court reviewed the cases of Halsey v. Ackerman, and Williams v. McKay, *supra*, and held that in so far as the plaintiff was a stockholder they were liable to him for losses resulting from their negligence, because of the fiduciary relations existing between them; but as for losses sustained by him as a mere creditor they were not liable to him for such negligence, because they did not occupy the relation to him as such creditor, and there was no evidence of diversion by them of the bank funds from their legitimate channel.   .

In Frost Manufacturing Co. v. Foster, 76 Ia. 535, it was held that "the fact that directors of a corporation have mismanaged its business does not render them liable to creditors, unless they are made liable by the provisions of the articles of incorporation or by statute."   [3 Thompson Commentaries on the Law of Corporations, sec. 4137.]

So in Fusz v. Spaunhorst, 67 Mo. 256, it is held, that in the absence of statutory or constitutional provisions, a

St. Louis v. Sommers.

director or officer of an insolvent incorporated bank is not individually responsible in an action at law for injury resulting to a creditor or depositor from the management of the bank, unless the injury be occasioned by his intentional or fraudulent act.

Our conclusion is that the relation of defendant bank to plaintiffs is that of debtor and creditor, and that for the mere failure of the bank directors to exercise ordinary diligence and care as such, in the management of the business affairs of the bank, by reason of which the bank became insolvent they can not be held responsible at the suit of its general creditors.

We accordingly affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.