Daugherty v. Poundstone.

W. A. DAUGHERTY et al., Appellants, v. R. F. POUNDSTONE, Respondent.

Kansas City Court of Appeals, October 1, 1906.

1. TRUSTS AND TRUSTEES: Bank Directors: Shareholder: Pleading: Finding: Appellate Practice. The directors of a dissolved bank, acting as trustees to liquidate the business, in an action to recover a portion of the dividends mistakenly paid to the defendant, sued him as a shareholder. *Held*, they could not recover on the ground that he was a director and therefore a trustee; and held, further, that the question of his trusteeship being found in his favor with the trial court, will not be reviewed by the appellate court.

2. ———: ———: ———: Refunding Dividends. The trustees of a liquidating bank, may, on proper conditions, recover from a shareholder dividends paid by mistake where necessary to meet the lawful demands against the institution.

3. ———: ———: Negligence of Cashier: Action. The conduct of a cashier and his assistants in paying unauthorized checks and charging them to a depositor's account, is negligence and gave the bank a right of action against such officers, which the trustees could enforce.

4. ———: ———: Officers: Negligence: Action: Scienter. The directory of a banking institution is the executive board thereof and is liable for the policy of the business and for the handling of the bank's funds within the bounds of sound business, and are liable for loss through the misconduct of officers in matters under its control, regardless of actual knowledge thereof.

5. ———: ———: ———: ———: ———: ———. The function of the directory is, however, essentially managerial and does not extend to the details, such as paying of checks, that do not in the regular course of things come under its observation, and therefore are not liable for the negligence of receiving and disbursing officers.

6. ———: ———: **Cashier: Former Suit: Res Adjudicata.** A depositor sued the trustee of a liquidating bank for her deposit. On the trial it was found that the cashier and his assistants assumed that the plaintiff's husband had authority to sign the wife's name. After paying the judgment, the trustees, of whom the cashier was one, brought suit against the stockholder for contribution. *Held*, the negligence of the cashier in the payment of checks is *res adjudicata*.

7. ———: ———: **Shareholder: Delinquent Officer: Exhausting Assets: Action.** The directors of a liquidating bank are vested with legal title to all the property, rights and choses in charge of the corporation and are bound to employ reasonable diligence to collect assets and pay the proceeds to those entitled to receive them and may not sue stockholders for dividends alleged to have been mistakenly paid so long as they have causes of action against the cashier and his assistants for the negligent payment of the checks.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Perkins & Blair* for appellants.

(1)   Under the general doctrine of reimbursement and contribution as administered in courts both of law and equity, plaintiffs are entitled to a judgment against the defendant for the amount sued for unless the evidence establishes some one or more of the affirmative defenses set up in the defendant's answer, and which are valid and subsisting defenses under the laws of this State, and which would relieve the defendant of liability. 1 Pomeroy's Equity Jurisprudence, secs. 407 and 411; 1 Beach on Private Corporations, sec. 141; 7 Am. and Eng. Ency. of Law (2 Ed.), p. 326, et seq.   (2)   In a case like this, where the stockholders had unanimously agreed to go into voluntary dissolution, and had done so, and the entire assets of the bank had been paid out and distributed to the stockholders, and a judgment afterwards obtained against the directors as trustees for

the bank, the stockholders are primarily liable each for his proportionate share of the judgment paid by the trustees. R. S. 1899, sec. 976; 2 Beach on Private Corporations, sec. 789; Burrall v. Railroad, 75 N. Y. 211; Shields v. Hobart, 172 Mo. 517; Bank v. Chandler, 19 Wis. 434; Adler v. Mfg. Co., 13 Wis. 63. Zane on Banks and Banking, pages 119 to 123; Bank v. Ten Eyck, 48 N. Y. 305. (3) But even if he had not been a director his liability in this case would have been just the same because he had no right to receive his proportionate part of the assets of the bank until the debts were paid. It did not belong to him free from debts. It was his, subject to the debts of the corporation. Section 976, R. S. 1899; 2 Beach on Private Corporations, sec. 789; Burrall v. Railroad, 75 N. Y. 211; Shields v. Hobart, 172 Mo. 517; Bank v. Chandler, 19 Wis. 434; Adler v. Mfg. Co., 13 Wis. 63. (4) In addition to this, in the case at bar the liability on which the judgment in the Federal court was rendered was without misconduct on the part of the plaintiffs, and under such circumstances they can recover contribution from the stockholders. Tyrell v. Washburn, 6 Allen (Mass.) 466; 7 Am. and Eng. Ency. of Law (2 Ed.), page 363; Adler v. Mfg. Co., 13 Wis. 63.

*Thomas & Hackney* for respondent.

(1) The fact that the moneys of Louisa Brown were improperly paid out by the managing officers on the checks of Joseph Brown, without authority, was found by the Federal court in the case in which judgment was rendered in favor of Louisa Brown against the plaintiffs, and by this finding the plaintiffs are bound in this case. In fact, there was no effort made on the trial of this case to contest that finding. (2) The plaintiffs are in no position on this appeal to contend that the defendant was a director in the Bank of Carterville, at the time of the handling of the moneys of Louisa Brown,

for these reasons: First, because the finding of the trial court on this issue in favor of the defendant is binding on this court; second, the plaintiffs are precluded by the allegation of their amended petition from claiming that defendant was such director, it being averred in said amended petition that the plaintiffs and Henry Weyman and G. P. Ashcraft composed the board of directors. (3) The plaintiffs being president, vice-president and cashier of the bank and constituting a majority of the board of directors, were the active managing officers of the Bank of Carterville, and they are liable to the bank and to any stockholder for all losses sustained through their negligence, mismanagement or misappropriation of the funds of the bank. Bank v. Hill, 148 Mo. 380, and cases cited. (4) Plaintiff W. B. Kane, cashier of the bank, and the sureties on his bond, are responsible to the bank and to its stockholders for the loss sustained by honoring or authorizing the honoring of checks of Joseph Brown, drawn on his wife's funds, without her authority, and likewise W. C. Burch, the assistant cashier, and the sureties on his bond, would be similarly liable for any such checks which he honored or authorized to be honored. Bank v. Stumpe, 2 Mo. App. 545; Minor v. Bank, 1 Peters (U. S.) 46; Sec. 976, R. S. 1899. (5) The right of the trustees of the dissolved bank to require the stockholders to refund moneys previously distributed among the stockholders, would in any case be postponed until the trustees had exhausted every other resource of the dissolved bank, and thus collected and applied all of its assets.

JOHNSON, J.—Action by the trustees of a dissolved corporation against a stockholder to recover money paid as a dividend that should have been applied to the payment of a creditor's demand. A jury being waived, the cause was tried by the court resulting in a judgment for defendant from which plaintiffs appealed. No find-

ings of fact were made and no declarations of law asked or given.

The petition alleged that plaintiffs W. A. Daugherty, T. N. Davy and W. B. Kane, together with H. Weyman and G. B. Ashcroft, composed the board of directors of the Bank of Carterville, a Missouri corporation.

Defendant was a stockholder owning fifteen shares of the stock of the bank of the par value of $1,500. The entire stock of the bank amounted to $25,000, divided into 250 shares. On April 7, 1897, the bank went into voluntary liquidation, pursuant to a resolution unanimously adopted by the shareholders at a meeting duly called for that purpose. A short time thereafter the directors as trustees (Revised Statutes 1899, section 976), sold all the assets to another bank and out of the proceeds realized, paid depositors and creditors in full with a single exception — the cause of this controversy — and paid a dividend to the stockholders of 100 per cent. Defendant received $1,500 as his share of the dividend. After this Louisa Brown brought suit in the circuit court of the United States for the Western district of Missouri against the trustees to recover the amount of a deposit she carried in the bank. She alleged the dissolution and liquidation of the corporation; the fact that the trustees had received sufficient funds to pay all of the creditors in full, and their refusal to pay her demand. She recovered judgment against the trustees, which was discharged in full by the plaintiffs in the present suit out of their own funds. The amount so paid was $4,728.14. The cause of action here asserted is predicated on the idea that the stockholders having received in the dividend paid the entire assets of the corporation, should reimburse the trustees the amount they were compelled to pay in satisfaction of the Brown judgment and accordingly defendant is sued as a stockholder for his proportional share of that liability.

A detailed statement of the facts developed in the
Brown case may be found in the report thereof [120
Fed. Rep. 526.] Those pertinent to the present inquiry
thus may be stated: On June 1, 1895, Mrs. Brown's
husband deposited $4,000 in the bank in her name and
the bank issued her a pass book. The money was her
property, but between the time of the deposit and the dis-
solution of the bank, all of the deposit except some $700
was paid out on checks signed by the husband. These
checks were presented at intervals during the period
mentioned and ranged in amounts from $50 to $500
each. Mrs. Brown did not authorize her husband to
check on the deposit and had no knowledge that her
money was being dissipated in this manner. The learned
judge who wrote the opinion held that the cashier and
his assistant were not justified in assuming as they did
that Brown had authority from his wife to sign her
name to checks and that the money so withdrawn could
not be charged against the deposit.

The cashier, W. B. Kane (one of the plaintiffs),
testified in the present case that he had no knowledge
of the fact that Brown was signing his wife's name to
checks drawn against the deposit and that the checks
were honored by the assistant cashier, W. C. Burch. It
appears that Kane and Burch are solvent. Each had
given a bond to the bank conditioned for the faithful
performance of duty. That given by Burch was in the
sum of $10,000 and was signed as surety by W. A.
Daugherty, one of the plaintiffs. It appears that neith-
er the cashier, the assistant cashier, nor their sureties,
have been called on by the trustees to make good the
loss sustained on account of the Brown judgment.

Plaintiffs introduced substantial evidence tending
to show that in January, 1897, defendant was elected a
director of the bank and was acting in that capacity at
the time of the dissolution and therefore was one of the
trustees in charge of its liquidation. We are besought

120 App.—20

Daugherty v. Poundstone.

by plaintiffs to regard defendant as such trustee, but this we cannot do for two reasons. The petition not only fails to allege that defendant was one of the trustees, but affirmatively shows that he sustained no such relation, and the wrong complained of is his refusal to contribute as a stockholder. This is an entirely different cause of action from one predicated on the wrongful refusal of a trustee to contribute to the discharge of a liability resulting from a breach of duty on the part of himself and his co-trustees. It is elementary that a plaintiff must recover, if at all, on the cause of action pleaded and not on some other cause.

But should the fact under consideration be considered as having been at issue under the pleadings, it was settled against the contention of plaintiffs by the judgment rendered. Defendant's evidence shows that he was not a director, and with this conflict in the evidence before us, and in the absence of findings of fact and declarations of law, we must assume the court found the fact in favor of the defendant and treat that finding as we would the verdict of a jury.

Assuming, then, that defendant was not a trustee and that as a shareholder his dividend was proportionally increased by the amount the trustees should have paid to Mrs. Brown out of the proceeds of the sale of the assets before a distribution was made among the stockholders, should defendant be compelled to restore to the trustees the share of that amount received by him? Had the trustees through excusable ignorance of the existence of a demand against the estate, distributed the fund among the shareholders and thereby exhausted the estate, we would find no difficulty in saying that on the discovery of the mistake, each shareholder should be compelled to restore the fruits thereof received by him. The right of shareholders to a division of the proceeds of liquidation is subordinate to the right of creditors to have their demands paid in full and it would be

Daugherty v. Poundstone.

unjust and contrary to well-settled principles of law to permit the shareholders to profit at the expense of the trustees from an honest and excusable mistake of fact.

It may be conceded that when the distribution was made, the trustees were ignorant of the existence of the demand afterwards asserted by Mrs. Brown, but the conduct of the cashier and the assistant cashier in paying out the funds of the bank on unauthorized checks, and charging such disbursement to Mrs. Brown's account, was inexcusably negligent and gave the bank a right of action against those delinquent officers, which could have been enforced by the trustees.

Two questions arise—should the directors be held personally responsible for this negligent conduct of the officers, or if not, should the trustees be compelled to exhaust their remedy against the culpable officers before they may call on the stockholders for reimbursement?

Should the first question be answered in the affirmative the action must fail. The plaintiffs were directors of the bank and if they are chargeable with the negligence of its officers they are in the attitude of attempting to recover from the stockholders that which they were bound in law to render to the corporation in restitution of the loss suffered through their wrong and which the stockholders were entitled to receive as proceeds of the liquidation. They could not occupy a position clearly so unsound in law and morals.

But were the directors guilty of any wrongdoing in not preventing the disbursing officers from honoring unauthorized checks? They had no actual knowledge of the negligent acts and their fault, if it exists at all, must consist in not preventing the continuance of acts, the existence of which they should have known had they properly discharged their duty. The board of directors of a banking corporation is the executive body thereof, and as such is invested with all of the powers

required to be exercised in the management of its concerns. It selects the active officers and should supervise and control them in the discharge of their several duties. It should dictate the policy of the business and the course of dealing to be followed with the public whose money the institution receives and uses for profit, and should know how the funds entrusted to the corporation by stockholders and depositors are being handled by the officers, and keep the officers within the bounds of law and reasonably sound business policy. The idea seemingly so prevalent that directors may content themselves with the performance of no other functions than electing officers and declaring dividends, cannot be tolerated. Whether they are to be regarded as trustees of an express trust or as agents of the corporation and its constituent parts, their duty requires them to perform with reasonable care and diligence the functions pertaining to the general supervision and control of the business, and they cannot relieve themselves of this duty by delegating its performance to the bank officers. If the bank suffers loss through the misconduct of officers in matters which the directors should have known and controlled, the directors may be held liable regardless of their want of actual knowledge, for they will be presumed to know the things they should have known.

On the other hand, the duty of the directors, being essentially managerial in its nature, does not impose on them the task of mastering and keeping in touch with the multitudinous details incident to the business, nor does it extend to acts falling within the ordinary executive functions of the various officers. Checks and drafts are paid, notes and bills indorsed, deposits received and like transactions conducted as a matter of course by the proper officers. Neither actually nor theoretically does the board of directors sit at the cashier's desk nor stand at the paying teller's window, and the faithful

performance of a purely executory act necessarily must depend solely on the good sense, honesty and diligence of the actor. As one author observes, such acts "do not constitute the 'management' of the bank nor interfere with the control of its affairs. They are properly the medium through which that management and control are introduced into the practical transactions." [Morse on Banks and Banking (4 Ed.), sec. 118.] The acts of the disbursing officers in paying the unauthorized checks presented by Mr. Brown were merely executory, had no relation to the management of the bank, and therefore cannot be classed with transactions that in the regular course of things should have come under the observation of the board of directors, and this being true, the directors should not be held at fault for the negligence of these officers. [Bank v. Hill, 148 Mo. 380, and authorities cited.]

Before proceeding to a discussion of the second question propounded, we will determine the question of the cashier's negligence. That officer in his testimony casts the entire blame on the assistant cashier. The cashier was a party to the Brown suit and one of the vital issues there litigated was the culpability of the cashier and the assistant cashier in paying these checks and charging them to Mrs. Brown's account. The fact from which the negligence of the cashier follows as a necessary conclusion, was expressly found against him in this language: "The cashier and the disbursing clerk assumed that Brown had the authority to sign his wife's name to checks upon an assumption of authority based alone on his statement." Neither this fact nor its legal results are properly in issue in the present case. They are *res adjudicata* and the negligence of the cashier will be assumed as a fact settled by judgment.

Turning now to the second question, it is clear that plaintiffs as trustees have not exhausted the assets of the corporation. Not only is there an existing cause of ac-

tion against Brown—an asset of doubtful value, but a cause exists against the cashier and the sureties on his bond as well as one against the assistant cashier and his sureties. The solvency of these parties is unquestioned; the liability of the cashier as we have shown is already adjudicated and any judgment recovered against him on account of the wrong committed may be collected on execution, and yet the trustees have taken no steps to enforce liability against these officers and their sureties, nor have they even made a demand on them for restitution. Indeed, they are denying the liability of the cashier and are urging the fact that the assistant cashier was not a party to the Brown suit and therefore not bound by the judgment in that case as an excuse for their failure to proceed against him because of the possibility that he may be able to show after all that Mrs. Brown did authorize her husband to sign checks for her. The position of plaintiffs obviously is chosen in bad faith and with the design to shield one of them, the cashier and his subordinate officer, from liability and shift their burden to the stockholders. A scheme so censurable in morals should not be permitted to succeed in law, and fortunately a very sound reason may be advanced to defeat it.

Plaintiffs as trustees are invested with the legal title to all of the property, rights and choses in action of the corporation and are bound to employ reasonable diligence to collect the assets and pay over the proceeds to those entitled to receive them. They hold the legal title to collectible demands against those who are primarily liable to make good the loss, which if enforced will cover the loss. The mere fact that under a mistake of fact they distributed among the stockholders money that should have been paid to the creditors does not of itself give them a cause of action against the stockholders for reimbursement. The liability of the stockholders to refund depends upon the further facts that the trus-

tees have faithfully executed their trust, have exhausted their remedy against the primary obligors and have in hand no other assets belonging to the trust out of which to reimburse themselves. In other words, they must show that they have fully performed their duty and are the victims of an innocent mistake before they may call on those to whom they owe that duty for relief.

The judgment is affirmed. All concur.