**DRUMMOND COMPANY,**
Plaintiff/Appellant,

v.

**ST. LOUIS COKE & FOUNDRY SUPPLY CO., et al.,**
Defendants,

and

**Robert E. Woods, Jr.,**
Defendant/Respondent.

No. ED 84884.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 18, 2005.

Application for Transfer to Supreme Court
Denied Nov. 29, 2005.

Application for Transfer Denied
Jan. 31, 2006.

Sanford J. Boxerman, Clayton, MO, for appellant.

Thomas M. Blumenthal, Clayton, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Drummond Company, Inc. ("Drummond") appeals from the judgment of the trial court directing a verdict in favor of Robert Woods, Jr. ("Bob Woods") as to Count IX of its fourth amended petition, which alleged a corporate director breached a fiduciary duty to a creditor. Drummond contends that the trial court erred in directing a verdict in favor of Bob Woods because it was entitled to submit its claim to the jury in that there was sufficient evidence for a jury to find that, as a director of St. Louis Coke & Foundry Supply Co. ("St. Louis Coke"), Bob Woods breached a fiduciary duty to Drummond, a creditor, to stop the diversion of corporate funds when St. Louis Coke was insolvent. Finding no error, we affirm.

Under our standard of review, when a directed verdict is granted in favor of a defendant, this Court views the evidence and permissible inferences in the light most favorable to the plaintiff, disregarding contrary evidence and inferences. *Mprove v. KLT Telecom, Inc.*, 135 S.W.3d 481, 494 (Mo.App.2004). Applying that standard, the facts are as follows. Drummond is the largest supplier of coke in the United States. It had a longstanding business relationship with St. Louis Coke for more than forty years prior to the commencement of the current litigation. Drummond, through its division, ABC Coke, supplied all of St. Louis Coke's requirements for coke. Essentially St. Louis Coke operated as a broker, making sales to third-party customers and addressing customer concerns, with Drummond shipping coke directly to the third-party customers ("end users") and invoicing St. Louis Coke. St. Louis Coke sent invoices to its customers, who paid it, and St. Louis Coke in turn paid Drummond. St. Louis Coke retained a set commission for each ton of coke product that it sold. From 1994 through a portion of 2000, Drummond and St. Louis Coke did business under a contract ("1994 Agreement"). Under the terms of the 1994 Agreement, St. Louis Coke was required, in most circumstances, to pay Drummond within thirty-seven days after Drummond submitted an invoice to St. Louis Coke.

Bob Woods was the president of St. Louis Coke from approximately 1970 to 1990. He was succeeded by Steve Potter, whom he hired. Steve Potter in turn was replaced as president by Bob Woods' son, Robert Woods, III ("Rob Woods") in the mid–1990s. Rob Woods continued as president of St. Louis Coke at least until it

filed a Chapter 11 reorganization bankruptcy proceeding in 2002. During the time that Rob Woods was president of St. Louis Coke, Bob Woods served as chairman of the board ("chairman").[1] Bob Woods and Rob Woods collectively controlled a majority of the stock of St. Louis Coke, though they were not the only shareholders, and Rob Woods regarded the firm as a closely-held corporation. As chairman, Bob Woods had the right to examine the financial records of St. Louis Coke at any time, but did not do so. Bob Woods was active in the company and worked with customers both in selling and collecting accounts receivable.

In 1998, Rob Woods and his wife started up another closely held company, Score, Inc. ("Score"). Rob Woods served as president of that firm as well as St. Louis Coke.[2] From 1998 onwards St. Louis Coke loaned substantial sums of money to Score, with some of the loan proceeds apparently used to purchase equipment for Score. At least some of St. Louis Coke's proceeds from the sale of coke supplied by Drummond went to fund Score's operations and purchase of equipment. Between June, 1999 and December, 2001, Score made periodic repayments on the loans and funds transferred to Score. Bob Woods, though he was familiar with Score, purportedly had no knowledge of these transfers, though he was aware from looking at the receivables of St. Louis Coke that there was a "significant" receivable due from Score.

Sometime in the late 1990s, St. Louis Coke fell behind in its payments to Drummond for the coke supplied to its customers. As of February 2000, St. Louis Coke

owed Drummond in excess of $2.8 million dollars on its existing debt ("Old Debt") invoiced before January 24, 2000. St. Louis Coke owed Drummond approximately $800,000 more on invoices between January 24, 2000 and February 22, 2000 ("New Debt"). Drummond and St. Louis Coke made efforts to try to resolve this outstanding debt issue. Bob Woods made a trip to Alabama to meet with executives of Drummond, and with an attorney, negotiated a new agreement, executed February 23, 2000 ("2000 Agreement") and signed by Bob Woods as chairman. Bob Woods was aware at that time that St. Louis Coke was behind in its payments to Drummond.

The 2000 Agreement set up a payment schedule to retire the Old Debt, which included monthly payments of $50,000 from April 1, 2000 to May 1, 2002, periodic "balloon payments" and a final payment on June 1, 2002. The 2000 Agreement also addressed payment of the New Debt, requiring St. Louis Coke to immediately notify Drummond by fax of the receipt of payments for coke and to thereafter remit those funds to Drummond by wire transfer by the next business day at the latest. The 2000 Agreement did not give St. Louis Coke any security interest in or liens against the assets of St. Louis Coke, Bob Woods, or Rob Woods. St. Louis Coke made some strides towards reducing the Old Debt, but by April 20, 2001, Rob Woods informed Drummond that St. Louis Coke would not be able to make the $50,000 monthly payments under the 2000 Agreement for April 2001 and at least several months thereafter without restructuring the debt. St. Louis Coke continued to sell product supplied by Drummond to

---

1. Bob Woods apparently was chairman at other times as well, but the record does not indicate the precise dates that he held the office of chairman or was otherwise a member of the board of directors of St. Louis Coke.

2. Rob Woods and his wife were the sole shareholders of Score.

customers during the period from April 2001 to September 2001. On September 26, 2001, Rob Woods informed Drummond that it would not be able to make a payment, and on the following day, St. Louis Coke's attorney informed Drummond that the company could not meet its debts and would likely file bankruptcy absent further debt restructuring. Drummond thereafter began to sell directly to the end users. Litigation ensued. In April 2002, St. Louis Coke filed Chapter 11 reorganization proceedings.

Drummond filed suit against St. Louis Coke, Rob Woods, and others in an effort to collect the money owed to it by St. Louis Coke. Its fourth amended petition included a number of claims against various defendants, which now included Bob Woods. Many of these claims were dismissed or resolved prior to trial. The case went to trial on Drummond's Count III fraudulent misrepresentation claim against Rob Woods, and on the Count IX breach of fiduciary duty to creditor claim against both Bob Woods and Rob Woods.

At trial, Drummond claimed that Woods owed a fiduciary duty to stop St. Louis Coke's "diversion of funds" to Score from the sale of Drummond's coke. The evidence showed that starting in June, 1998, Score built up a debt to St. Louis Coke that amounted to approximately $1,547,766 by the time that Drummond entered into the 2000 Agreement with St. Louis Coke on February 23, 2000. By April 20, 2001, when St. Louis Coke began having troubles paying the Old Debt to Drummond, Score had reduced its indebtedness to St. Louis Coke to approximately $1,128,070. During the period from April 20, 2001 until September 26, 2001, when St. Louis Coke was having problems paying its Old Debt to Drummond, there were additional transfers of funds from St. Louis Coke to Score of approximately $451,518. This included

a $100,000 transfer to Score on May 4, 2001. During this same period, Score repaid approximately $401,419 to St. Louis Coke. By September 27, 2001, when Drummond quit furnishing product to St. Louis Coke, Score's net indebtedness to St. Louis Coke had been further reduced to approximately $935,651. By January 18, 2002, Score's net indebtedness to St. Louis Coke had increased to approximately $1,002,979.

During the period St. Louis Coke was having trouble paying the Old Debt, Bob Woods was aware that St. Louis Coke had a substantial receivable due to it from Score. He did not discuss this matter with the president of both companies, his son, Rob Woods. Bob Woods also made no effort to collect any of the money owed to St. Louis Coke by Score, purportedly because he believed that Score could not pay it.

At the close of evidence, the trial court denied Rob Woods' motion for directed verdict as to the Count III for fraudulent misrepresentation, and granted Bob Woods and Rob Woods' motion for directed verdict as to Count IX for breach of fiduciary duty to creditor. Thereafter the jury returned a verdict in favor of Drummond and against Rob Woods on Count III in the amount of $1.4 million actual damages, with no punitive damages. Drummond now appeals from the order of the trial court directing the verdict in favor of Bob Woods on Count IX.

As previously noted, in reviewing a directed verdict granted in favor of a defendant, this Court views the evidence and permissible inferences in the light most favorable to the plaintiff, and disregards contrary evidence and inferences. *Mprove*, 135 S.W.3d at 494. We determine whether, on the evidence so viewed, plaintiff made a submissible case. *Id.* Where the grant or denial of a directed verdict is

based on a conclusion of law, we review the trial court's decision *de novo. Id.*

The trial court's order directing the verdict on Count IX does not state the basis for its decision. The transcript indicates that the trial court did not consider there to be a cause of action in Missouri for breach of fiduciary duty to creditors. At the same time, the transcript also suggests that the trial court focused on the definition of "insolvency" in making its decision to grant the motion for a directed verdict in favor of Bob Woods. The issue of whether there is a cause of action for breach of fiduciary duty to creditors is dispositive of this appeal. Drummond concedes that no Missouri case has held there to be a cause of action for breach of fiduciary duty by a corporate director to a creditor of the corporation. Drummond urges that we recognize a new common law cause of action.

■ Missouri courts have held that, as a general rule, absent statutory authority, or an intentional or fraudulent act, the relationship between a creditor and a corporation is that of contract, not one of trust. *Kroeger v. Garkie,* 274 S.W. 478, 480 (Mo.App.1925) (quoting *Utley v. Hill,* 155 Mo. 232, 55 S.W. 1091, 1098 (1900). *See also Premier Bank v. Tierney,* 114 F.Supp.2d 877, 886–87 (W.D.Mo.2000) (applying Missouri law); *Stone v. Rottman,* 183 Mo. 552, 82 S.W. 76, 81–82 (1904); *Union National Bank v. Hill,* 148 Mo. 380, 49 S.W. 1012, 1016 (1899)). The relationship between a corporation and a creditor is merely that of a debtor and creditor. *Union National Bank,* 49 S.W. at 1017. Mere nonfeasance is not sufficient to impose individual liability upon corporate directors and officers; rather, active malfeasance or a specific statutory liability creating an individual cause of action for creditors is necessary to create such individual liability. *See Tierney,* 114 F.Supp.2d at 886–87; *Kroeger.* 274 S.W. at 480; *Stone,* 82 S.W. at 81–82; *Hill,* 49 S.W. at 1016–17. There was no evidence that Bob Woods committed an intentional or fraudulent act. He had participated in the negotiations of the 2000 Agreement, but there is no evidence that there was any fraudulent intent in those negotiations. He knew that Score owed significant amounts of receivables to St. Louis Coke, and suspected that Score could not readily pay those receivables, but did not authorize transfers of funds to Score. There was no evidence that Bob Woods committed any acts of active malfeasance.

■ Statutory corporation law in Missouri has created individual liabilities for directors in certain cases. Section 351.345 RSMo (2000), for example, provides that individual directors are jointly and severally liable for the debts of the corporation for the amount of any dividend they knowingly declare and pay not in accordance with relevant statutes, not to exceed the amount of such dividends.[3] Absent directors or those who properly objected are exempted from liability, as are those who relied in good faith on corporate records or officials. *Id.* Section 351.476 addresses the effect of a corporate dissolution, stating that a dissolved corporation cannot carry on any business save that appropriate for winding up its affairs. Sub-section 351.476.2(3) provides that corporate dissolution does not

> [s]ubject its directors or officers to standards of conduct different from those applicable to directors and officers of a corporation which has not been dissolved; provided that any such officer or director who conducts business on behalf of the corporation except as provided in

**3.** Unless noted otherwise, all further statutory citations are to RSMo (2000).

this section shall be personally liable for any obligation so incurred.

Corporate directors and officers who exceed their trustee-like statutory duties in winding up the business affairs of a dissolved corporation become personally liable under section 351.436.2(3). Section 351.486 creates a similar statutory personal liability for directors and officers of a corporation which has been administratively dissolved. No such statute creates personal liability for directors based on the evidence in the case before this Court.

Missouri has rejected the concept that corporate directors are fiduciaries for creditors, even in the event of insolvency, and has held that directors are not individually liable to creditors, absent statutory authority or an intentional or fraudulent act. *See Union National Bank*, 49 S.W. at 1016; *Alberger v. National Bank of Commerce*, 123 Mo. 313, 27 S.W. 657, 657–59 (1894). Transfers made to defraud creditors are governed by Chapter 428 RSMo, known as the "Uniform Fraudulent Transfer Act." The remedies for creditors in cases involving fraudulent transfers are listed in section 428.039, and essentially look to avoiding the transfer in part or in whole, or to attaching the transferred asset or the proceeds therefrom. Section 428.039 does not specifically provide for the personal liability of corporate directors or officers to creditors in the event of a fraudulent transfer.[4]

Early Missouri cases do recognize directors' liability to creditors in the limited situation where the corporation is not a going concern, but rather clearly going out of business or incapable of doing business, and that it is conclusively established that it is insolvent. *See Banta v. Hubbell*, 167 Mo.App. 38, 150 S.W. 1089, 1091–92 (1912); *Warren v. Mayer*, 163 Mo.App. 451, 143 S.W. 861, 863–64 (1912); *Sarah A. Williams et al. v. The Jackson County Patrons of Husbandry and John P. Jones*, 23 Mo.App. 132 (Mo.App.1886). *See also Land Red–E–Mixed Concrete Company v. Cash Whitman, Inc.*, 425 S.W.2d 919, 923 (Mo.1968) In such cases the corporation was effectively *de facto* dissolved, placing the directors and officers in a trustee-like position for the equal benefit of all creditors, similar to the liability imposed by statute under sections 351.476 and 351.486.[5] Such cases are inapplicable in the present case, because there was no evidence that St. Louis Coke was clearly going out of business, incapable of doing business, or not a going concern at the time of the disputed transfers. Instead, there was evidence that despite its financial difficulties, St. Louis Coke continued to sell coke supplied by Drummond to customers during the period of time through September 2001.[6]

There was no breach of a statutory fiduciary duty on the part of directors and officers to creditors in this case. Nor did the evidence in this case establish any common law liability or duty. According-

---

**4.** Missouri has long had statutes that hold transfers or conveyances that actively or constructively defraud creditors to be void. These statutes do not state that corporate directors or officers are fiduciaries for creditors and personally liable to them.

**5.** While nearly all of the cases cited above involve allegations that corporate directors and/or officers of purportedly insolvent corporations engaged in preferential treatment of some creditors over others, which is not the

factual situation in the case before this Court, they do involve the liability of corporate officers and directors for transfers of corporate assets, and are therefore analogous.

**6.** There is little evidence in the record as to the nature of St. Louis Coke's business activities between September, 2001, and April 2002, when it filed for reorganization in bankruptcy under Chapter 11 of the United States Bankruptcy Code.

ly, Drummond failed to make a submissible case on its claim of breach of a fiduciary duty to creditors on the part of Bob Woods in his capacity as a director. The trial court did not err in directing a verdict in favor of Bob Woods as to Count IX of Drummond's fourth amended petition.

The judgment of the trial court is affirmed.

MARY K. HOFF and PATRICIA L. COHEN, JJ., concur.