## BIRCHER v. WALTHER et al., Appellants.

### Division One, June 12, 1901.

1. **Trust Funds**: ASSIGNMENT. If trust property has been mingled by a company with its own property, so that the one can not be distinguished from the other, and it transfers its property to a trustee or assignee for the benefit of its creditors, a court of equity, as between the *cestui que trust* and the personal creditors of the company making the assignment, will follow the trust property or its proceeds, and if the same can be traced into the property or assets transferred to the trustee or assignee, will impress on such property or assets a lien in favor of the *cestui que trust* to the extent that the property or assets transferred have been swelled by the trust property or its proceeds. But, if there is no evidence that the trust property, or its proceeds, went to swell the company's assets transferred to the assignee for the benefit of creditors, but on the contrary was paid out on the debts of the company and for its current expenses, this rule can not be invoked, and a court of equity ought not to decree the claim of the *cestui que trust* to be a preferred claim over that of other creditors.

2. ———: ———: SUBSCRIPTION TO STOCKS. The plaintiff subscribed and paid to a company $1,000 for preferred stock to be issued when the company increased its capital. The money was soon used to discharge obligations then existing against the company and for current expenses, and the capital stock was not increased and no preferred stock was issued, but about a year later the company assigned to a trustee and gave preference to other claims over that of plaintiff. There was no evidence that this money was used to swell the assets assigned. Plaintiff knew how the money he had paid was used, and more than once demanded his certificate of stock. *Held*, that plaintiff's claim can not be preferred over that of other creditors.

Transferred from St. Louis Court of Appeals.

REVERSED.

*Geo. M. Block* and *Geo. W. Lubke, Jr.,* for appellants.

(1)   The conveyance in question made to appellant Walther was lawful and valid.   Alburger v. Bank, 123 Mo. 313; Foster v. Planing Mill Co., 92 Mo. 79.   (2)   The relationship between respondent and the St. Louis Sheet Metal Ornament Company in its inception even, was that of debtor and creditor, not trustee and *cestui que trust.*   Schierenberg v. Stephens, 32 Mo. App. 314; Keane v. Beard, 11 Mo. App. 20; Eaton v. Pacific National Bank, 144 Mass. 260; Winters v. Armstrong, 37 Fed. Rep. 521.   (3)   Conceding that the relationship between respondent and said company was that of trustee and *cestui que trust* in its inception, respondent has acquiesced in the change of that relationship to that of debtor and creditor, made subsequently, when, with full knowledge of the company's financial condition, and that the money paid by him to the company was applied to the payment of its debts and that the company was taking no further steps to increase its capital stock as proposed to him, he failed to assert his rights to recover back his money and ratified the action of the company by subsequently asking for his certificate of stock.   After the rights of subsequent creditors have intervened he is estopped from claiming any trust.   Teasdale v. McPike, 25 Mo. App. 341; Dymock v. Railroad, 54 Mo. App. 400; Bank v. Bank, 71 Mo. 183; Neuhoff v. O'Reilly, 93 Mo. 164; Chapman v. Railroad, 6 Ohio St. 119; Kent v. Quicksilver Mining Co., 78 N. Y. 159; Pomeroy's Equity Jurisprudence, secs. 817 and 965.   Courts of equity do not aid those who do not use reasonable diligence or discretion in the conduct of their affairs. Chamberlain v. Peltz, 1 Mo. App. 183.   Respondent has slept on his rights so long that he can not be heard to assert them now to the injury of rights acquired by third persons having no knowledge of them.   "Equity aids the vigilant, not those

who slumber on their rights." Shradski v. Albright, 93 Mo. 42; Kroenung v. Goehri, 112 Mo. 641; Landrum v. Union Bank Co., 63 Mo. 49; Mathias v. O'Neill, 94 Mo. 20; Smith v. Washington, 11 Mo. App. 519; Burgess v. Railroad, 99 Mo. 496. According to his claims, respondent is in a position similar to that of one who holds a properly-executed mortgage in the assets of his debtor, which he deliberately withholds from record. As to subsequent creditors of his debtor, he can not be heard to assert his rights under the mortgage lien. Bank v. Buck, 123 Mo. 141; Bank v. Doran, 109 Mo. 40; Williams v. Kirk, 68 Mo. App. 457. (4) Conceding that the relationship between respondent and said company, in its inception, was that of trustee and *cestui que trust,* respondent is not entitled to any part of the assets in appellant Walther's hands as trust funds, because there is no proof that the assets which came into said Walther's hands were swelled by respondent's money. The proof shows the contrary. Phillips v. Overfield, 100 Mo. 466; Ulrici v. Boeckeler, 72 Mo. App. 661; Huettemann v. Vieselmann, 48 Mo. App. 582; Dailey v. Dailey, 125 Mo. 96. The facts in the case at bar are clearly distinguishable from those in the following cases, and hence the rule announced in them does not apply: Harrison v. Smith, 83 Mo. 210; Stoller v. Oates, 88 Mo. 514.

*J. M. Holmes* for respondent.

(1) The increased stock for which plaintiff subscribed, never came into existence. His subscription was conditional upon a valid increase of stock, and until such increase was had, the defendant corporation, receiving his subscription, held it in trust for him. 2 Commentaries on the Law of Corporations (Thompson), secs. 2079-2082; State ex rel. v. McGrath, 86 Mo. 239; Thompson on the Liability of Stockholders, sec.

120; Haskell v. Worthington, 94 Mo. 560; Morawitz on Corporations, sec. 137; Minneapolis Machine Co. v. Davis, 40 Minn. 110. (2) The defendant corporation, by fraudulently commingling plaintiff's money, held in trust, with its own assets, did not divest plaintiff's title, and plaintiff has the right to follow the fund, and has an equitable lien thereon to the extent of his money incorporated therein. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 521; Munroe v. Collins, 95 Mo. 33; Evangelical Synod v. Schoenich, 143 Mo. 652; Pundman v. Schoenich, 144 Mo. 149; Tiernan's Executor v. Association, 152 Mo. 135; Flint Road Cart Co. v. Stephens, 32 Mo. App. 341; Snodgrass v. Moore, 30 Mo. App. 232; Hockensmith v. Hockensmith, 57 Mo. App. 378; National Bank v. Sanford, 62 Mo. App. 394; Independent District v. King, 80 Iowa, 497; (3) The defendant Walther, trustee, has no greater or other right in the premises than his assignor. Green v. Conrad, 114 Mo. 651; Independent District v. King, 80 Iowa 497; Bank v. Brightwell, 148 Mo. 358;

BRACE, P. J.—On the twelfth day of August, 1897, the St. Louis Sheet Metal Ornament Company duly executed a deed of trust conveying all its property and assets to the defendant Walther, to secure the payment of certain debts evidenced by two schedules: schedule A, amounting to about $3,000 and schedule B amounting to about $600. The debts in schedule A numbered from 1 to 7 inclusive, with power to sell and apply the proceeds to the payment, first, of the debts named in schedule A in numerical order, and then to those named in schedule B, pro rata. Debt No. 6, in schedule A is "John R. Bircher, open account, $500," and No. 7 is "Rudolph Bircher, open account, $1,000." At the October term, 1897, of the St. Louis City Circuit Court, this suit was brought by

the said Rudolph Bircher, in which he claims that said sum of $1,000, was furnished by him upon a contract evidenced by a receipt as follows:

"St. Louis, October 9, 1896.

"Received of Rudolph Bircher, the sum of one thousand dollars for which the undersigned agrees to sell to him twenty shares of the par value of $50 each, of its preferred stock out of the increase of its capital stock now about to be increased to $15,000, and to be made in accordance with the laws of the State of Missouri, said increase to be made as speedily as the law will allow, and the certificates for said stock to be delivered as soon as such increase is authorized, upon the return of this receipt.

"St. Louis Sheet Metal Ornament Company,
"By FRED BUEL, President.
"CHAS. A. SCHULZE, Secy. and Treas."

That said company never increased its capital stock, never issued any stock to him, preferred, or otherwise; but used said $1,000 in its business, and praying that a prior lien be decreed in his favor for that amount on the assets of said company in the hands of said trustee. From the decree of said circuit court in his favor as prayed for, with six per cent interest from the ninth of October, 1896, the defendant Walther, trustee as aforesaid, and defendants, the Jefferson Bank of St. Louis and George W. Lubke, Jr., beneficiaries in said deed of trust, whose debts in schedule A are numbered, respectively, 1 and 2, appealed to the St. Louis Court of Appeals, where the decree of the circuit court was affirmed, but upon the dissent of one of the judges thereof, to the decision of the majority, the case was certified to this court. [Bircher v. Sheet Metal Ornament Co., 77 Mo. App. 509.]

The plaintiff, Rudolph Bircher, and the said John H.
Vol 163 mo—30

Bircher are brothers. The material evidence on the trial tended to prove, that on the ninth of October, 1896, John R. Bircher was a stockholder in and an employee of the company. That the company was a going concern, but in straitened circumstances. That to relieve its situation it was determined to extend its business outside of the city and for that purpose to increase its capital stock, some of the increase to be preferred stock. That with this in view the officers of the company proposed to John H. Bircher, that if he would get his brother to subscribe for $2,000 of the proposed preferred stock, they would make him secretary and treasurer. This proposition John communicated to his brother Rudolph, who declined the proposition, but agreed to put in $1,000 in his brother's interest. In pursuance of this agreement between the brothers, Rudolph procured a check for $1,000 from Mr. Espenschied, the administrator of his father's estate, gave it to John, who gave it to the secretary of the company, and thereupon, the receipt aforesaid was duly executed and delivered to John, and by him delivered to his brother Rudolph, and the proceeds of the check went into the business of the company, and was paid out in the usual course of that business. That afterwards, on the tenth of December, 1896, at a meeting of the stockholders of the company of which John H. Bircher was secretary, and at which Rudolph Bircher was present, a resolution was adopted as follows:

"Resolved, That the capital stock of the company be increased from $7,000, its present capital, to $15,000, and that of such increase of capital stock $5,000 shall be preferred stock, divided into one hundred shares, of the price of fifty dollars each, upon which a dividend of seven per cent per annum shall be paid out of the net yearly income earned in any one current year, before any dividend shall be made or paid on the general stock of this company, and that the remainder

Bircher v. Walther.

of such increased capital stock shall be general or common stock."

This resolution was never carried into effect, no increase of the capital stock was ever had, and, of course, no preferred stock was ever issued or delivered to the plaintiff, who, both before and after that date, demanded his certificates therefor. The company thereafter continued its business as before until the twelfth of August, 1897, when the deed of trust in question was executed. In pursuance of the power therein contained, the property thereby conveyed, whatever it was, was sold, and the net proceeds thereof, amounting to the sum of $1,425, was in the hands of the trustee at the date of the trial, and it was in this fund that the court found that the plaintiff had a right and equity to the extent of one thousand dollars with interest at the rate of six per cent per annum from the ninth day of October, 1896, and out of it decreed payment accordingly.

(1) The points upon which appellants rely for reversal of the decree are the same as those urged and passed upon by the Court of Appeals, and while we may not concur in all of the dicta of that opinion, as we do agree to the conclusions reached on all of the points except two, one of which is decisive of the case, to a consideration of these this opinion will be confined.

In the recent case of Paul v. Draper, 158 Mo. 197, we had occasion to examine all the Missouri cases on the main question in hand, and while in that case it did not become necessary to formulate the rule to be deduced, not from dicta, but from the rulings of the appellate courts of this State on the facts in judgment in those cases, it may well be done in this case. That rule is, as we understand it, that if trust property has been mingled by the trustee with his own property, so that one can not be distinguished from the other, and he transfers

his property to a trustee or assignee for the benefit of his creditors, a court of equity, as between the *cestui que trust* and the personal creditors of the trustee, will follow the trust property or its proceeds, and if the same can be traced into the property or assets transferred to the trustee or assignee, will impress upon such property or assets a lien in favor of the *cestui que trust* to the extent that the property or assets transferred have been swelled by the trust property or its proceeds. This equitable lien is based upon the idea that the trust property or its proceeds, though not distinguishable, is in the assigned property or its proceeds in some shape, and not upon the fact that the trustee wrongfully commingled the trust property or its proceeds with his own, and the proceeding in equity is not to charge the property or assets in the hands of his trustee or assignee with his wrongdoing; but is in fact, though not in form, a proceeding in equity between the *cestui que trust* and the personal creditors of the trustee for an equitable separation of the trust property or its proceeds, which should go to the *cestui que trust,* from the debtor's own property or its proceeds which should go to his personal creditors; or rather, for an equitable adjustment on that basis. The action is not maintained against an assignee of an insolvent debtor because the debtor wrongfully commingled trust property with his own (for that wrong his creditors are no more responsible than is the *cestui que trust*), but because the condition produced by that act can only be remedied by a court of equity. The basis of the action is not the wrongful act of the debtor, but the condition produced by that act. The action, though in form against the assignee, is in fact a contest between the *cestui que trust* and the other creditors claiming adverse interests in the assigned estate, the extent of whose interest is to be ascertained by the court, and to the extent to which it is found to belong to the one or the other, to that extent it is to be awarded to the one

or the other. As suitors in a court of equity, they stand upon an equal footing—each to have what rightfully belongs to him. A misconception of the basis of a lien of this character, and of the nature of the proceeding to establish it, seems to have led the Court of Appeals and the circuit court into error. For there was no evidence tending to prove that the check received by the company on the ninth day of August, 1896, or its proceeds, went into the property transferred by the deed of trust on the twelfth day of August, 1897. On the contrary, all the evidence tended to prove that soon after its receipt, its proceeds were paid out on debts of the concern and for current expenses, and the evidence further tended to prove, that the fact that it was being so used was well known to the plaintiff, and to his brother to whom he had entrusted the management of the business. There is nothing in the facts of this particular case that appeals very strongly to the conscience of the chancellor. The plaintiff, together with all the other creditors, trusted the company in confidence that they would discharge their obligations to them. They failed to do so. The real character of these obligations is not essentially different. The difference between that to the plaintiff and those to the other creditors is one of form rather than of substance. At all events, we know of no equitable principle applicable to the facts of the case authorizing a change in the order of preference which the company had the right to make, or, in any view of the case, for allowing interest. It follows from what has been said that the judgment of the Court of Appeals and of the circuit court ought to be reversed, and it is accordingly so ordered.

All concur.