J. W. CRAIG, Appellant, v. HENLEY STACY, G. L. HALL, S. L. MILLER, J. W. SHOEMAKER, J. E. DOUGLAS, W. F. REYNOLDS, J. O. REYNOLDS and WILLIAM HINTON.—50 S. W. (2d) 104.

Division One, May 27, 1932.

*Barnett & Hayes, C. A. Calvird, Jr., Roy D. Williams* and *Watson, Gage, Ess, Groner & Barnett* for appellant.

*C. C. Dickinson, Nick M. Bradley, W. E. Suddath, Jas. A. Parks* and *W. E. Owen & Son* for respondents.

HYDE, C.—This is an action by a depositor of a failed bank, on behalf of himself and other depositors, to recover the amount, remaining due on their deposits, after crediting thereon certain divi-·dends received from the Commissioner of Finance liquidating the bank. Seventy-seven other depositors assigned their claims to appellant. The case is here on the pleadings, the trial court having sustained a demurrer to the petition. Appellant's petition alleged that respondents, former directors of the Farmers Bank of Leeton, in 1922, executed a contract between themselves and the Commissioner of Finance (the Commissioner did not sign it), the material parts of which are, as follows:

"WHEREAS, the said second party has, by his examiner, Collins E. Bushnell, made an examination of the Farmers Bank of Leeton, Leeton, Missouri, and

"WHEREAS, the said second party believes, as a result of said examination, that the above named bank has certain assets of slow, uncertain and doubtful value which will result in a substantial loss to said bank; therefore, the capital stock of said bank is believed to be impaired and the bank in an insolvent condition;

"Now, therefore, in consideration of said second party agreeing not to take over the affairs of the above named bank and granting them permission to remain open for business temporarily, in order to perfect a reorganization and to collect or secure such uncertain and doubtful assets and adjust such unsatisfactory conditions as exit, the parties of the first part agree to and do guarantee all the assets and all the liabilities of whatsoever nature, except liabilities to stockholders as such for their capital stock, owing by said bank and guarantee the payment and agree, if necessary, to pay all the obligations of the above named bank on demand at maturity of each and every such obligation of the above named bank and in further consideration of the above privilege being granted by the second party, the first parties hereby release and discharge second party of all obligations of every kind and character and agree to hold him harmless on account of above permission."

Appellant's petition stated that this instrument was executed after an examination of the bank from which the examiner was of the opinion that the bank was not in a solvent condition; that its capital

stock was impaired; and that it had assets of uncertain and doubtful value which would result in substantial loss. The petition stated that the Commissioner of Finance contemplated closing the bank; that for the purpose of preventing its closing and to obtain permission to remain open for business, temporarily, in order to effect a reorganization and to collect or secure the uncertain and doubtful assets respondents executed this contract. The petition further alleged that this was done for the purpose of making the bank solvent; that the Commissioner of Finance relied on it, believed that the bank was rendered solvent by it, and permitted the bank to remain open for business; that it was made for the benefit of all creditors of the bank and was a continuing guaranty for the benefit of all persons who should become creditors or depositors of the bank thereafter; that on October 7, 1925, the bank was closed by the Commissioner of Finance and is in the process of liquidation; and that during such liquidation dividends in the amount of 40⅓ per cent have been paid. These allegations are followed by seventy-eight specific counts, which adopted them, stated the amount for which each depositor's claim was filed, and allowed in the liquidation proceedings; stated the amount which remained unpaid after crediting the dividend thereon; and alleged the assignment of the claim to appellant. The total amount sued for is $38,633.70. Respondents' demurrer stated two grounds: That the petition did not state facts sufficient to constitute a cause of action, and that it appeared upon the face of the petition that plaintiff had not legal capacity to sue. Upon the court sustaining the demurrer, appellant declined to plead further, and judgment was entered for respondents. Appellant appealed from this judgment.

I. The demurrer was well ruled. Assuming that a cause of action could arise against respondents out of the instrument executed by them, none is stated in the petition in this case. A consideration of the instrument and its purpose as disclosed by it and the facts pleaded in the petition will determine this question. Clearly, it was executed because such a substantial part of the bank's assets were of doubtful value that the examiner, at the conclusion of his examination, believed the bank was insolvent and would have to be reorganized. This meant additional capital would have to be raised. Evidently the directors believed that some of the assets, which the examiner doubted, could be collected or secured. The amount which could be collected or put in satisfactory condition would necessarily make a difference in the amount of new capital to be raised. To show their faith in the bank's assets, which no doubt they, as directors, had been instrumental in acquiring, they agreed to guarantee all the assets of the bank. They also agreed, if necessary (which undoubtedly meant, if necessary, because the assets of the bank were not of suf-

ficient value to pay its debts), to pay all its liabilities except its liability to its stockholders. We think the agreement is essentially a guaranty of the assets of the bank. Whether the depositors, for the recovery of whose deposits this suit is brought, were depositors at the time this guaranty was made or became depositors while the assets guaranteed were owned by the bank, whether these same assets, or any of them, are now in the hands of the Commissioner; whether the bank was reorganized, the unsatisfactory conditions referred to remedied, the bank put in a solvent condition, the guaranteed assets collected or replaced and the agreement thereby became *functus officio;* or whether the bank was given extensions of time to collect and secure its assets and reorganize, we are not informed by the pleadings. These and other facts are necessary to state a cause of action and to show whether or not any cause of action now exists against respondents on their agreement.

II. However, regardless of these questions, the second ground of the demurrer must be sustained. Even leaving out of consideration the fact that the agreement was made to the Commissioner of Finance, we think that, at least while the Commissioner has charge of the bank for liquidation, no depositors or other creditors can maintain such a suit as this. ■ It is ordinarily true that a receiver stands in the place of a corporation and can enforce only such rights as the corporation could enforce, but for some purposes and under some circumstances, the receiver represents not only the corporation but also the creditors, and when this is so the rights of the creditors should be worked out through the receiver. [14a C. J. 990, sec. 3232; 53 C. J. 324, sec. 537.] Especially do receivers of banks hold its assets in favor of and have the duty to assert and to guard the claims of depositors and other creditors as the paramount and superior claims against its assets. [7 C. J. 735, sec. 702.] This is true from the very nature of banking, affected as it is with the public welfare and involving as it does, in case of insolvency, the rights of so many people who are unable to adequately protect their interests. Recognizing this, our Legislature has adopted a special kind of receivership for the liquidation of insolvent banks. [Art. 1, Chap. 34, R. S. 1929; see Koch v. Missouri-Lincoln Trust Co., 181 S. W. 44.] This receivership is through an officer experienced in banking, the Commissioner of Finance. His duties and the procedure to be followed in the liquidation of insolvent banks are there set forth. ■ Section 5318, Revised Statutes 1929, prohibits banks from making an assignment and requires them, when in a failing condition, to be placed in the hands of the Commissioner. If this is not done by the bank itself the Commissioner is authorized by Section 5316 to take possession when it is discovered to be insolvent. When the Commissioner comes into possession he

becomes an officer of the court, holding the assets of the bank in his hands as a trust estate, to be administered under the direction of the circuit court of the county, in which the bank is located, for the benefit. of the depositors and other creditors of the bank. [Secs. 5323, 5324, 5325, 5326 and 5330, R. S. 1929.]. By Section 5332, he is given the power to sue in the name of the bank for the purpose of executing any of his powers or performing any of his duties and he may also execute conveyances and other instruments, necessary for the same purposes, in the name of the bank.· [Bank of Oak Ridge v. Duncan, 328 Mo. 182, 40 S. W. (2d) 656.] By Section 5341, he is authorized, at any time during the liquidation within six years after accrual of the cause of action, to maintain in his name as Commissioner any action, vested in the corporation, its stockholders or creditors, against its officers or directors. Sections 5333, 5334, 5335, 5336 and 5337 provide the notice to be given depositors and other creditors, the procedure to be followed by depositors and other creditors in establishing claims, and for payment thereof so far as the funds derived from the assets of the bank will pay them. It is even provided by Section 5340 what shall be done with any assets remaining in case depositors and other creditors should be paid in full.

■ We think that the plain meaning and intent of this procedure is that all depositors and other creditors shall share equally in proportion to their claims from any funds it is possible to collect from the assets of the bank, the liability of the officers and directors to the bank for losses caused by negligence or mismanagement, and likewise from any obligations the officers or directors may have undertaken to preserve its solvency. We think that it is likewise its plain intent and meaning that claims to share in funds, derived from any of these sources, shall be established in the liquidation proceedings, through action thereon, by the Commissioner or the court in which he is administering the trust estate; and that the Commissioner shall collect any funds, it is possible to collect, from any of these sources and apply them proportionately to the payment of the claims of the depositors and other creditors at such times as he may be authorized and directed to do so by the court.· Any other interpretation would make equality among depositors and other creditors impossible. If a depositor or a group of depositors could bring such actions as this one, it would result in preferring one general creditor over another. Our statutes, providing the procedure for liquidating banks, intend that all general creditors should be treated alike.

■ Of course, depositors who have been individually wronged, by any of the officers or directors or by all of them together, by reason of their deposits having been received with knowledge that the bank was in failing circumstances have their remedy against such officers

and directors under Sections 5381, 5382 and 5383, Revised Statutes 1929. [Ivie v. Bailey, 319 Mo. 474, 5 S. W. (2d) 50.] Even prior to the enactment of our present laws, providing for this special receivership by the Commissioner, this court held: ''That there could be no recovery by depositors against directors of a bank because of the negligence of the directors in managing the affairs of the bank; and that the directors are liable for negligent performance of duty to the bank, or to its assignee or to a receiver thereof.'' [Fusz v. Spaunhorst, 67 Mo. 256; Union Natl. Bank v. Hill, 148 Mo. 380, 49 S. W. 1012; Utley v. Hill, 155 Mo. 232, 55 S. W. 1091, 49 L. R. A. 323, 78 Am. St. Rep. 569; Stone v. Rottman, 183 Mo. 552, 82 S. W. 76; see, also, Kroeger v. Garkie (Mo. App.), 274 S. W. 478; 7 C. J. 569, sec. 177, p. 747, sec. 541; 3 R. C. L. 466, sec. 97, p. 470, sec. 99; Douglass v. Dawson (N. C.), 130 S. E. 195; U. S. F. & G. Co. v. Corning State Sav. Bank (Iowa), 134 N. W. 857, 45 L. R. A. (N. S.) 421 and note.]

From these authorities it seems that where a creditor has suffered a wrong not common to all other creditors, he may recover of the officers and directors responsible for it; for instance (in addition to statutory liability for receiving deposits), an action for deceit (7 C. J. 735, sec. 501; 3 R. C. L. 471, sec. 100); ██ but that where the amounts for which officers and directors may be liable result from matters affecting all creditors they constitute assets of the corporation for the benefit of all creditors, and suit therefore must be brought by the receiver. They hold further that where the receiver refuses to bring the suit, upon demand, creditors have a remedy in equity to maintain the suit on behalf of all creditors. The present suit is not such an action in equity on behalf of all creditors. It is an action at law by one creditor seeking to recover from the directors what is due him and certain other creditors whose assignment he holds. It is not shown that the Commissioner will not, nor even that he has not, sued on this instrument. There can surely be no doubt that a quaranty, of all the assets of a bank, is an asset of the bank as much as is the liability of directors for acquiring worthless assets for it by mismanagement or neglect of their duties. It is indeed likely that they signed this guaranty because they recognized that liability. While Part I hereof required affirmance of this judgment, it is important, to both the parties entitled to the benefit of this guaranty if any one is, and those who made it, that this court rule on who is entitled to enforce it.

The judgment is affirmed. *Ferguson, C.,* concurs; *Sturgis, C.,* concurs in Part I and the result.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. *Gantt, P. J., Atwood* and *Frank, JJ.,* concur; *Ragland, J.,* concurs in Part I and result.