STATE EX REL. CHARLES U. BECKER, Secretary of State, by DON C. McVAY, for and in Their Behalf, Appellants, v. THE FARMERS' EXCHANGE BANK OF GALLATIN, in Liquidation, S. L. CANTLEY, Commissioner of Finance, and JOSEPH N. MARTIN, Deputy Commissioner of Finance, in Charge.—56 S. W. (2d) 129.

Division Two, December 14, 1932.

690

*Stratton Shartel*, Attorney-General, *Smith B. Atwood, Walter E. Sloat*, Assistant Attorneys-General, and *Dudley & Brandom* for appellant.

*Ed. C. Hyde* and *Earle W. Frost* for respondents.

692.

COOLEY, C.—The State of Missouri and Charles U. Becker, Secretary of State, filed petition in the liquidation of an insolvent bank asking preference on account of money belonging to the State which was in the bank when it closed. The circuit court allowed the demand as a common claim but denied it preference. From this judgment the claimants appealed. The appeal was allowed to the Kansas City Court of Appeals which transferred the cause to this court on the ground that it was without jurisdiction because a State officer is a party to the action but without designating whether it referred to the Secretary of State or the State Commissioner of Finance. ■■ It has been decided that in proceedings of this character the relation of the Commissioner of Finance to the controversy does not give this court appellate jurisdiction. [Bank of Darlington v. Atwood, 325 Mo. 123, 27 S. W. (2d) 1029; City of Doniphan v. Cantley, 330 Mo. 639, 50 S. W. (2d) 658; Consolidated School District No. 2 of Clinton County v. Gower Bank (Mo.), 53 S. W. (2d) 280.] We take jurisdiction because a State officer, the Secretary of State in his of-

ficial capacity, is a party to the proceeding. [See Butler v. Board of Education of Cons. Sch. Dist. (Mo.), 16 S. W. (2d) 44.]

The determinative facts were either formally admitted or sufficiently proved, as follows: The Farmers' Exchange Bank of Gallatin, Missouri, an incorporated state bank, was engaged in a general banking business until March 4, 1926, when, having become insolvent, it closed its doors and placed itself in the hands of the State Commissioner of Finance who proceeded to liquidate it. In due time claims were filed and allowed aggregating an amount greatly in excess of the collectible assets of the bank.

Claimants' demand was for money collected by Mr. Becker, as Secretary of State, through his agent, Don C. McVay, for sale of automobile licenses, that is, license fees collected from owners of motor vehicles, and was all deposited by Mr. McVay in said Farmers' Exchange Bank at various times between February 1, 1926, and March 4, 1926. The deposits were made in an account styled "Gallatin Motor Company License Account," in which no money was deposited except that so derived and upon which no checks were drawn except to transmit the money to the State Treasurer or to a depository for such funds which Mr. Becker had established at Trenton. The bank at all times knew the source from which the money was derived and that it belonged to the State. The bank had not been designated as a depository for such funds and had given no bond as such. [The statute then in force did not provide for the deposit in banks of moneys so collected by the Secretary of State and the taking of bonds from the depositories as is now provided, but required that such fees should be made payable to the State Treasurer and promptly transmitted to that officer.] The amount of such money so on deposit when the bank closed was $2157.86. At all times from February 1, 1926, to March 4, 1926, inclusive, the bank had in its vaults and in other solvent banks cash in excess of the amount so on deposit in said account and cash in excess of such amount passed into the hands of the Commissioner of Finance when he took charge. ·Except that in this case no bond was taken from the bank the facts relative to the deposit and its nature are similar to those in State ex rel. Gentry v. Page Bank of St. Louis County, 322 Mo. 29, 14 S. W. (2d) 597. The statutory provisions relative to collection and disposition of motor vehicle license fees were the same when the deposits here in question were made as in the Page Bank case.

Without going into detail it is stated in substance in respondents' additional abstract that the circuit court allowed general claims aggregating $487,952.85, disallowed claims aggregating $246,788.18 [whether claimed as preferred or common claims is not stated] and allowed preferred claims aggregating $22,264.65. It is further stated in said additional abstract that:

694

"These preferred claims consist of statutory preference such as the deposits of the Commissioner of Finance in the liquidation of other failed banks; labor claims, etc., aggregating $12,134.81; notes and other assets collected by the Commissioner of Finance after the bank closed, which did not belong to the bank, aggregating $3,446.36; collections made for city banks, during the last two days the bank was in operation, aggregating $5,643.48; and other claims where the bank had during the last few days of its operation obtained possession of other property, which it had not accounted for, or held in escrow aggregating $1,040."

It further appears that the Commissioner will probably have out of the money and other assets coming into his hands about $170,000 to pay costs of liquidation and distribute among creditors. For a condensed statement of the condition and assets of the bank when it closed reference is made to In re Farmers' Exchange Bank of Gallatin, 327 Mo. 640, 37 S. W. (2d) 936, which was a claim filed and in which preference was asked in the liquidation of this same bank. The facts therein stated as appearing in the respondents' additional abstract also appear in the additional abstract herein. In addition it is here shown that of the $106,433.07 collected from notes coming into the hands of the commissioner only $11,749.83 was from loans made in 1926.

■ I. Respondents concede that appellants' claim is entitled to preference over claims of general creditors under the ruling in State ex rel. v. Page Bank, supra, "as against the assets of the Farmers' Exchange Bank coming into the hands of the Commissioner, which were acquired and went into the said bank after February 1, 1926," appellants' funds having been deposited after that date. But they insist the preference should not be allowed against or paid out of any assets held by the bank prior to that date. They contend that it appears from the record that assets "originating and acquired by the bank, during 1926," the amount which reached the commissioner could not have exceeded $28,762.92; that of the total amount of preferred claims allowed by the trial court $10,129.84 was "on account of trust funds which went into the assets of the bank in 1926;" and they further state in their brief (though the abstract of record naturally does not and could not show this) that on appeals taken by other claimants the appellate courts subsequently directed the allowance of preferences aggregating over $44,000 "on account of trust funds which went into the bank during 1926."

It does not appear that any of the preferences ordered by the trial court or any of those respondents say have since been ordered by appellate courts were directed to be paid out of any particular assets. So far as the record shows they were simply allowed as preferred

claims to be paid out of any assets in the hands of the commissioner. Neither is it shown that the State's money was not part of the cash held by the bank when it closed. The specific money deposited in the account in question of course could not be traced after it was placed in the bank, having been there commingled with moneys the bank had received from other sources, including perhaps other trust funds as well as money legally deposited with it and to which it took title. But the State's money was all placed in the bank within a short time prior to its closing. It is not shown to have been dissipated by the bank. The bank at all times during the existence of that account had on hands cash in excess of the amount of that fund and when it closed had in its safe more than that amount of cash and this passed into the hands of the commissioner. In addition, it then had on deposit in solvent banks $15,772.88, which those banks retained and applied on debts of the Farmers' Exchange Bank to them. The money thus retained did not reach the commissioner in the form of cash and respondents argue that the commissioner therefore never received it. But if those creditor banks held collateral of the debtor bank securing the debts of the latter to them, as they doubtless did, such payment of the debts released the collateral to that extent. Even if such creditor banks had not taken security the payment to them enhanced *pro tanto* the net value of the assets which passed into the commissioner's hands. The principle involved is thus stated in In re Farmers' Exchange Bank, 327 Mo. 640, 37 S. W. (2d) l. c. 943, quoting from Nichols v. Bank of Syracuse, 220 Mo. App. 1019, 278 S. W. 793, 797:

" 'When all of the money arising from general deposits and from the receipt of a trust fund goes into one general mass, and is used in the general business of the bank, as was done in this case, then the whole assets of the bank are subject to a lien in favor of the *cestui que trust*. In order to have been a dissipation of the trust fund, it must be shown either that that fund can be traced specifically, and that it has been dissipated, *without augmenting the funds of the trustee*, or that the general fund with which the trust fund was wrongfully mingled has all been dissipated, and the entire estate of the insolvent trustee has arisen from other sources . . .' "

Similarly, in Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S. W. (2d) 751, 754, this court, speaking of a deposit of county money, said:

"If, therefore, the trust company had not so qualified on June 27, 1927, the deposit of the county funds with it was unlawful; and it, in receiving such funds under color of being a county depository, wrongfully obtained possession of them. The county moneys so obtained thereupon became, in the hands of the trust company, a trust fund by operation of law. These funds entered into, became commingled with, and to that extent augmented, the trust company's

assets as a whole. Such assets may therefore be impressed with the trust to the extent of the funds so wrongfully obtained and commingled with them.'' [See also to the same effect, Mann v. Bank of Greenfield, 329 Mo. 862, 46 S. W. (2d) 874, 875; Harrison Twp., Vernon County v. People's State Bank, 329 Mo. 968, 46 S. W. (2d) 165, 166.]

So far as this point is concerned the facts of the instant case bring it within the rule announced in the foregoing cases. Respondents cite, among others, State ex rel. v. Page Bank, supra, but that decision does not limit the preference allowed as contended for by respondents. Nor in our judgment do any of the cases cited, where the facts are analogous to those here presented, sustain respondents' contention. We rule this point against respondents and hold that the State's claim is entitled to preference over claims of general creditors as against the assets of the bank generally in the commissioner's hands.

■ II. Appellants' petition asks that the State's claim be given priority of payment not only over general claims but over other preferred claims. This precise question is not briefed by appellants. But it is stated in respondents' brief that many appeals taken from the trial court's judgments denying preferences had not been determined when this case was briefed. It may be that there will not be sufficient funds to pay in full all preferred claims, in which event the contention made in claimants' petition will have to be determined by the circuit court in ordering distribution. To the end that the extensive litigation growing out of the liquidation of this bank may not be unnecessarily prolonged we deem it best to dispose of that question now insofar as it is presented by the petition herein.

Claimants' contention seems to be based upon the general statute (Sec. 3152, R. S. 1929, 7 Mo. Ann. Stat., p. 4969), providing that when any person indebted to the State is insolvent or dies leaving an estate insufficient to pay all his debts, ''the debts due to the State of Missouri shall be first satisfied'' (with certain exceptions not necessary to note.) The petition is not drawn upon the theory that the State is entitled to a lien upon the real estate of the bank under the provisions of Section 11439, Revised Statutes 1929, and does not attempt to state facts invoking the application of that section of the statute. We therefore shall not attempt to determine whether or not the State might have asserted a claim to a lien on the bank's real estate under that statute.

In In re Holland Banking Co., 313 Mo. 307, 281 S. W. 702, it was held that Section 3152, Revised Statutes 1929 (Sec. 7212, R. S. 1919), did not apply in case of a deposit of State money lawfully made by the State Treasurer because the statutory provisions governing the deposit of State money by such treasurer evinced a legislative intent

to waive the State's right to priority of payment of such debts due it, which it would otherwise have under said Section 3152. In the Holland Banking Company case the deposit in question was legally made and created the relation of debtor and creditor between the bank and the State. In the instant case the State's right to a preference is based upon the proposition that the deposit in question did not create the relation of debtor and creditor but that of trustee and *cestui que trust*. Respondents contend that Section 3152 applies only to *debts* in the strict sense of that term, or as respondents phrase it, "merely provides for priority to the State amounting to a preference on obligations arising out of the debtor and creditor relationship and which ordinarily and otherwise would constitute simply a general claim entitled to no preference over other general creditors." In view of the principle of public policy underlying the common-law right of the sovereign to priority of payment and said statute which is substantially declaratory thereof (In re Holland Banking Co., supra, 313 Mo. l. c. 321), respondents' said contention is, to say the least, open to serious question. The statute seems to have been given a more liberal construction in favor of the State in Greeley v. The Provident Savings Bank, 98 Mo. 458, 11 S. W. 980, wherein it was held that the obligation to pay taxes on personal property comes within the purview of said priority statute. In State ex rel. Karrenbrock v. Miss. Valley Tr. Co., 209 Mo. 472, 490, 108 S. W. 97, the court quotes from Carondelet to Use v. Picot, 38 Mo. l. c. 130, in effect that a tax is not technically a debt, but says (209 Mo. l. c. 491) that under the conditions present in Greeley v. Bank, supra, it comes within the purview of said priority statute. That a similar United States statute is to be liberally construed in favor of the government and that "its purpose is not to be defeated by unnecessarily restricting the application of the word 'debts' within a narrow or technical meaning," see Price v. United States, 269 U. S. 492, 500, 46 Sup. Ct. 180, 70 L. Ed. 373.

It is unnecessary, however, to decide the interesting question thus suggested as to whether or not the State would be entitled to the priority asked by virtue of said Section 3152 were there no statute evidencing a legislative intent to waive the State's right to priority in the liquidation of insolvent banks, if such right might otherwise be claimed under said general statute. In our opinion the question of priority as against other preferred claims is determinable by the statutory provisions governing the liquidation of banks. That the State's right to priority of payment of demands due to it may be waived by legislative enactment will be conceded. The statute relative to the department of finance and to banking institutes provides a comprehensive and complete scheme not only for the control and regulation of such institutions while solvent but for their liquidation and the distribution of their assets when insolvent, and they can be liquidated

only in the manner thus prescribed. In that statute we find provisions relative to preferences to the State which we think clearly show an intent on the part of the Legislature to waive any priority which otherwise might have been claimed by the State under the prior general statute. As above pointed out it was so held regarding legal deposits of State money in In re Holland Banking Co., supra, where that question was fully considered. That opinion should be read in connection with this. In connection with the statutes and the legal propositions there discussed we note the following statutory provisions particularly applicable to the situation appearing in the instant case:

Section 5301 (references to the statute, unless otherwise noted, will be to R. S. 1929) requires the Commissioner of Finance to make periodical examinations of banking institutions, for which certain fees are to be charged or assessed, to be paid by the institution examined. Such institutions are also required, when they incorporate, to pay incorporation fees. Various sections of the statute provide that banks shall forfeit to the State specified sums for failure to comply with statutory requirements or with lawful requirements of the Commissioner of Finance. [See, for illustration, Secs. 5310, 5357, 5371, 5373, 5399.] There may be other such sections not above noted.

By Section 5390, when the Commissioner of Finance, pursuant to the powers conferred upon him, shall have levied any assessment upon any bank and shall have duly notified the bank thereof the amount so levied shall become a liability of the bank and be paid by it to the commissioner.

By Section 5295 the commissioner is required to pay or cause to be paid directly into the State treasury for the credit of the State Finance Department fund all incorporation fees and all moneys received by him from corporations or private bankers in payment of his charges or assessments against them or of any penalties or forfeitures incurred by them; all moneys recovered in actions brought by the Attorney-General (for collection of forfeitures and penalties) except such penalties and forfeitures as may by the Constitution be required to be paid into the county school funds; and all fees, perquisites and money received by the Finance Department or any salaried officer or employee thereof, from any source, on account of services rendered by the department or by such officer or employee.

Section 5409 provides that all moneys forfeited under the provisions of Article 2, (banks) when recovered, shall be paid into the State treasury for the use of the State Banking Department, where not otherwise provided by the Constitution.

It will be seen that under the foregoing statutory provisions the fees, assessments, penalties, forfeitures, etc., referred to, when paid, constitute·moneys belonging to the State. If not paid they are ob-

ligations due the State. It may happen that a bank will become insolvent and be taken over by the Commissioner of Finance for liquidation with assessments or penalties charged or chargeable against it remaining unpaid. Section 5300 provides:

"In case of the insolvency or voluntary or involuntary liquidation of any corporation or private banker to which this chapter is applicable, all unpaid charges lawfully assessed against it by the commissioner and all unpaid penalties and forfeitures incurred by it under any section of this chapter shall be entitled to priority of payment from the assets of such corporation, or banker *on an equality with any other priority given by this chapter.*" [Italics ours.]

In the same chapter, which contains the statute law governing the finance department and banking institutions, we find other preferences specifically provided for which inure to individuals and private corporations.

By Section 5303 the commissioner may take and hold as trustee for the owners any money remaining due to and unclaimed by creditors, depositors or stockholders of insolvent banks upon completion of liquidation, which money he is required to deposit in a solvent state bank, trust company or savings bank. In case of the subsequent insolvency and liquidation of such depository, such deposit "shall be entitled to priority of payment . . . *on an equality with any other priority given by this chapter.*" [Italics ours.]

Similarly, by Section 5331, money collected by the commissioner in the course of liquidating a bank is to be by him deposited from time to time in a state bank, savings bank or trust company, and in case of the insolvency and liquidation of the depository such deposits are by the statute given priority of payment "on an equality with any other priority given by this chapter."

The deposits referred to in Sections 5303 and 5331 will necessarily be composed mostly, if not entirely, of money belonging to private owners. It is thus apparent that by express provision of the statute the claims of the State referred to in said statute are given the same preference or priority as, but no greater than, those embraced in Sections 5303 and 5331 for moneys belonging to private owners. As to such claims so specifically given preference by the statute governing banks and their liquidation the State is by express provision of the statute placed on an equality with private claimants.

In view of the complete and exclusive provision made by statute for the liquidation of insolvent banks and the distribution of their assets and of the fact that certain obligations due from such banks to the State not arising out of the relation of debtor and creditor are by express provision of said statute given priority only on equality with other priorities specified for private persons, with *no provision* in such liquidation statute for any other or higher priority to the

State in any case, it seems to us unreasonable to believe the Legislature intended that Section 3152 should still apply to obligations due to the State not arising out of the relation of debtor and creditor other than those thus specifically placed on equality with private claims. As to such obligations thus specifically given priority on equality with private claims said general statute is necessarily superseded by the later specific provisions of the bank liquidation statute, which provides for a priority different from and inconsistent with that of the general statute. We can conceive of no reason the Legislature could have had for intending to give the State greater or higher priority for one class or kind of obligations not arising out of the relation of debtor and creditor than for some other class or kind of obligations of similar nature when the proceeds of all go alike into the State treasury.

We hold that Section 3152 has no application in a situation such as that here presented and that claimants' demand herein should be allowed as a preferred claim, to be paid, however, in proportion with other preferred claims if there should prove to be insufficient funds in the commissioner's hands for distribution to pay all preferred claims in full. The judgment of the circuit court denying a preference is therefore reversed and the cause is remanded to that court to be proceeded with in accordance with the views herein expressed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.