### In re Mt. Vernon Bank.

HOLLAND BANKING COMPANY, an Insolvent State Bank in Course of Liquidation, Appellant, v. MT. VERNON BANK, an Insolvent State Bank in Course of Liquidation.—66 S. W. (2d) 850.

Division One, December 22, 1933.

*Orin Patterson* and *Farrington & Curtis* for appellant.

*Rex V. McPherson* and *Robert Stemmons* for respondent.

HYDE, C.—This case, coming recently to the writer. is claim for preference asserted by the Commissioner of Finance on behalf of the Holland Banking Company, an insolvent bank in his hands for liquidation, against the Mt. Vernon Bank, also an insolvent bank in his hands for liquidation. The facts were stipulated and the judgment, which contains a statement of all the agreed. facts, was as follows:

"Now this day come the parties by their respective attorneys and submit this cause to the court upon the priority claim of the Holland Banking Company for $25,000 against the Mt. Vernon Bank and praying the priority of payment in accordance with Section 11714, Revised Statutes of Missouri for 1919, on an equality (*only?*) with any other priority given by Chapter 108, Article I, State Banking Department, Revised Statutes of Missouri for 1919, and also upon the following agreed statement of facts, to-wit:

"It is hereby stipulated and agreed that the following facts may be considered as proven in this cause.

"The Holland Banking Company, a state bank, closed its doors in January, 1924, and passed into the hands of the Finance Commissioner of the State of Missouri.

"J. E. Cahill, as Special Deputy Commissioner of Finance in immediate charge of the business and affairs of the Holland Banking Company made deposits in the Mt. Vernon Bank aggregating $25,000.

"The Mt. Vernon Bank failed and passed into the hands of the State Finance Commissioner, having said deposits of $25,000 as a part of its assets.

"The priority claim of the Holland Banking Company for $25,000 was filed against the Mt. Vernon Bank within the period of the special Statute of Limitations and pursuant to the notice to creditors to file claims and was approved by the special deputy in charge of the liquidation of the Mt. Vernon Bank.

"That it is questionable whether the assets of the Mt. Vernon Bank are sufficient after paying the expenses of liquidation to pay all of the preferences.

"That there are no penalties or forfeitures due the State of Missouri and no debts due the United States and that no dividend has been ordered in the liquidation of the Mt. Vernon Bank.

"And the court being fully advised in the premises and after hearing the argument of counsel finds that the claimant is not entitled to the allowance of the claim for $25,000 on an equality (*only?*) with any other priority given by Chapter 108, Article I, State Banking Department, Revised Statutes of Missouri for 1919, nor as a claim to be first satisfied from the assets of the Mt. Vernon Bank after paying the expenses of its liquidation or any debt or debts due the United States or the State of Missouri, but is entitled to the allowance of its claim as a preference.

"It is therefore considered, ordered, adjudged and decreed that the Mt. Vernon Bank pay the Holland Banking Company $25,000 and that the same be paid as a preference on an equality with all other preferences." (Parenthetical insertions ours.)

The appeal is on behalf of the Holland Banking Company and the sole contention, to be determined here, is stated, in the motion for new trial herein, as follows:

"The court erred in its decision that deposits of the funds of the Holland Banking Company aggregating $25,000, made by J. E. Cahill as Special Deputy Commissioner of Finance in the Mt. Vernon Bank were not entitled to be first satisfied from the assets of the insolvent Mt. Vernon Bank after paying the expenses of its litigation."

 It is well to first look to the provisions of our bank liquidation statutes for aid in the solution of this question. Banking, from its very nature, vitally affects the public welfare, and is, therefore, a business peculiarly charged with a public interest. Because insolvency of banks always involves the rights of many people, who are unable to adequately protect their own interests, the Legislature has adopted a special kind of receivership for the liquidation of insolvent banks by a public officer of the State. [Art. I, Chap. 34, R. S. 1929.] This plan provides a complete and exclusive scheme for the liquidation of insolvent banks and the distribution of their assets. [Commerce Trust Co. v. Farmers Exchange Bank, 332 Mo. 979, 61 S. W. (2d) 928; State ex rel. Becker v. Farmers' Exchange Bank, 331 Mo. 689, 56 S. W. (2d) 129; Craig v. Stacy, 330 Mo. 569, 50 S. W. (2d) 104; Koch v. Missouri-Lincoln Trust Co. (Mo.), 181 S. W. 44.] The liquidating officer or receiver for all banks is the Commissioner of Finance. The Deputy Commissioner in charge is only "the special assistant of the Commissioner, and acts under his direction." [State ex rel. Songer v. Fidelity & Deposit Co. (Mo.), 53 S. W. (2d) 1036.] When the commissioner takes possession, he holds the assets of a bank in his hands as a trust estate to be administered under the direction of the circuit court of the county in which the bank is located. [State ex rel. Songer v. Fidelity & Deposit Co. (Mo.), 53 S. W. (2d) 1036; Craig v. Stacy, 330 Mo. 569, 50 S. W. (2d) 104.] We must remember that this case is not a private controversy, but that the commissioner here, in liquidating the Holland Banking Company and the Mt. Vernon Bank is administering two separate trust estates, in which different parties are interested in the distribution of the proceeds and which are under the supervision of different circuit courts. The commissioner's only interest is to administer these trusts as the representative of all interested parties and to distribute the proceeds of each trust estate in the manner required by law. He properly brings the case here by appeal for such directions, since the matter of when, how, and to whom the funds of each trust estate shall be distributed is a matter to be decided by the courts and not by him. [Sec. 5339, R. S. 1929.] The funds which he collected from the assets of the Holland Banking Company, he was required to deposit "in one or more state banks, savings banks or trust companies." [Sec. 5331, R. S. 1929.] The choice of such depositories is a matter left to the commissioner's discretion, subject only to the limitation that they be institutions chartered under the laws of this State, which are under his supervision and within the jurisdiction of our own courts in cases of insol-

vency. He cannot, for example, deposit them in national banks located in this State. It is not contemplated that he shall take any security from such depositories, but the funds deposited are protected instead by the provision of this statute that "in case of the insolvency or voluntary or involuntary liquidation of the depository, such deposits shall be entitled to priority of payment on an equality with any other priority given by this chapter." Just what kind of a priority this provides for is the question decisive of this case.

On behalf of the Holland Banking Company it is argued that Chapter 34 only provides for priorities in three instances, namely:

Section 5300, Revised Statutes 1929, which provides for priority of payment of "all unpaid charges lawfully assessed against it by the commissioner and all unpaid penalties and forfeitures incurred by it under any section of this chapter." All such charges, penalties, and forfeitures are due to the State. [Sec. 5295, R. S. 1929.]

Section 5303, Revised Statutes 1929, which provides for priority of payment of unclaimed dividends held by the commissioner, after completion of liquidation of any bank for the creditors thereof, which he is required to deposit in state banking institutions to be held in trust by him for the persons entitled thereto.

Section 5331, Revised Statutes 1929, above referred to, which provides for priority of payment of money collected by the commissioner in liquidations and deposited in state banking institutions.

It is further argued that, since each of these actions contain the words "shall be entitled to priority of payment on an equality with any other priority given by this chapter," therefore, the priorities provided for in these three situations have priority over any other priorities arising out of any other situation. This interpretation does violence to the language used. Certainly saying that a claim shall have "priority of payment *on an equality with any other priority*" does not amount to saying that it shall have *priority greater than or prior to any other priority*. Nor does the statement that it shall be *"on an equality with any other priority," given by Chapter 34,* mean that priorities given by that chapter shall have *priority over any other priority given by any other statute or rule of law or equity*. There is no provision in our statutes elevating or preferring priorities given by Chapter 34 over any other priorities. There is nowhere in our bank liquidation code any classification of priorities placing them in first, second, third or other classes, as, for example, is made of claims against the estates of decedents under our General Administration Code. Had the Legislature intended to make any such classification it could have easily so stated it in clear and specific language.

The contention made also overlooks the fact that these three sections are not the only provisions in Chapter 34 giving priorities. Our Bank Collection Code, Section 5575, Revised Statutes 1929, also a part of Chapter 34, provides for a preferred claim for the owner of a check or other item sent for collection in the case of the failure

of the drawee bank and likewise in case of the failure of a collecting bank. There is nothing in these provisions which indicates that the preferred claims there given shall be only second preferred. In fact, wherever our statutes speak of preferred claims they speak as though there was only one class of preferences. Section 5339, Revised Statutes 1929, also in Chapter 34, provides for orders of distribution of the funds of banks in the hands of the commissioner for liquidation. It states that he shall make application to the court for authority to pay dividends and that the first order of the court "shall specify what claims, if any, are *entitled to priority* of payment and shall direct the commissioner regarding the manner (not order) of payment *of such prior claims.*" This court, considering these same sections relied upon here, decided that a preference allowed the State for its funds held by an insolvent bank as trustee *ex maleficio* is not entitled to priority over other preferred claims. [State ex rel. Becker v. Farmers' Exchange Bank, 331 Mo. 689, 56 S. W. (2d) 129.] In that case, this court commented upon the fact that Section 5300 referred to money due the State while Sections 5303 and 5331 referred to money mostly held for private owners, and in denying a prior preference to the State said: "As to such claims so specifically given preference by the statute governing banks and their liquidation, the State is by express provision of the statute placed on an equality with private claimants." In that case, the State was attempting to reclaim its own money from the assets of the failed bank; here, the Commissioner of Finance, acting in the capacity of a statutory receiver, is attempting to reclaim money which is held in trust for mostly private owners. Our conclusion is that there is no statutory authority for giving one preferred claim priority over another.

A distinction is sought to be made between preferred claims impressed as a trust upon the assets of a failed bank and those preferred by statute. We think that, upon general principles, there is no division of preferred claims into different classifications as to priority, under our liquidation system. Nor can there be any elevation of priorities specifically granted by statute over preferences granted upon the theory of equitable trusts. This must be apparent from a consideration of the fundamental principles upon which equitable preferences are based, namely: That the relation of trustee and *cestui* exists between the parties; that because of the transaction the trustee (the bank) did not obtain title to the *cestui's* money or property but merely got possession of it; that so long as the trustee has it the *cestui* can reclaim it as his own whether the trustee be solvent or insolvent; and that it is only necessary for the *cestui* to show that the trustee or its receiver still has it, either in its original form or commingled with its other assets. It is true that in tracing the proceeds of his property and proving its existence in the assets in the receiver's hand, the *cestui* is aided by the many presumptions in which the courts have indulged with the purpose of bringing about

equitable results, but we do not think that this court has ever sanctioned the allowance of an equitable preference on any other theory except that the *cestui* was being given back only his own property, the title to which he had never lost. [For a general discussion of these principles see 15 L. R. A. (N. S.) 1100, note; L. R. A. 1916C, 22, note; 80 A. L. R. 795, note; 82 A. L. R. 46, note, 1. c. 248, for review of Missouri cases.] If this is true, how could any priority granted by statute be paid ahead of, which would necessarily be out of, the proceeds of trust funds which the court had decided belongs to others? Would not a statute specifically so providing be unconstitutional as taking property without due process of law? Granted that the Legislature could give the State a prior lien upon the assets of an insolvent for its demands, what principle would justify the taking of property belonging to innocent third parties, which property the insolvent wrongfully obtained possession but not title? A statute taking away the right to reclaim a special deposit as a trust fund has been held to impair the obligation of contract in violation of the Federal Constitution. [In re Fidelity State Bank (Idaho), 209 Pac. 449, 31 A. L. R. 781, and note.]

In the liquidation of failed banks, the fact is often overlooked that the assets which come into the hands of the commissioner for distribution are derived from two sources: The general assets of the bank, acquired with the capital furnished by its stockholders and the funds deposited by its customers, which the bank owns; and the funds, which it has obtained under circumstances which make it a trustee, which the bank does not own. This court has aptly said that the allowance of preferences ''is in fact, though not in form, a proceeding in equity between the *cestui que trust* and the personal creditors of the trustee for an equitable separation of the trust property or its proceeds, which would go to the *cestui que trust,* from the debtor's own property or its proceeds which should go to his personal creditors.'' [Bircher v. Walther, 163 Mo. 461, 63 S. W. 691; see, also, In re Farmers Exchange Bank, 327 Mo. 640, 37 S. W. (2d) 936; Mann v. Bank of Greenfield, 329 Mo. 862, 46 S. W. (2d) 874.] The general creditors are entitled to all the assets belonging to the bank; those who are *cestuis* of trust funds are entitled to reclaim them, or their proceeds, if they are contained within the assets of the bank, because the bank never got title to them and does not own them. If the Legislature undertook to give the State a lien, such lien would undoubtedly attach only to the assets which belonged to the bank and which were subject to distribution among its general creditors, and not to such assets as it acquired with the proceeds of trust funds it did not own. A lien statute would allow it to be paid ahead of general creditors, but it would in nowise affect the return to *cestuis* of their own property. If it was the intention of the Legislature in enacting Sections 5300, 5303 and 5331 to give a lien upon the assets owned by the bank, the result would be in a case like

this, where the equitable preferences allowed amount to more than the funds for distribution, that there would be no assets to which the lien might attach. Thus the prior lien argument would entirely defeat the claim made here. We do not think that such a lien was intended by the Legislature, at least not by the section (5331, R. S. 1929) under consideration here.

If not, what was the legislative intent? It is said in the briefs that at the time it was enacted, the Legislature necessarily had in mind "that the courts of this State had been declaring equitable preferences to creditors in the liquidation of banks and other insolvents." We think so too. We think they also had in mind that the funds collected by the commissioner from the liquidation of a failed bank should only be temporarily placed in another depository, until distributed to those found entitled to them at the earliest possible moment; that such funds would be derived from an entirely new source as far as such depository was concerned and would necessarily increase its assets; that, because distributions should be frequently and speedily made therefrom, these funds should remain in liquid form readily available and not be used as ordinary deposits in usual banking loans and investments; and that they were, in their very nature, trust funds being administered by a public officer for the benefit of others under the supervision of a court of equity. We think that for these reasons they intended that title to them should not pass to the depository where they were kept (as in the ordinary case of usual deposits even of trust funds by a trustee), but that they should retain their character as trust funds and should constitute a special deposit which could be reclaimed by the commissioner in case of insolvency for the benefit of the trust estate of which they formed a part. We hold that the statute makes them trust funds in the hands of the insolvent depository and that they are entitled to priority of payment on an equality with any other priority which is granted under any authority whether statutory or upon the equitable principles of reclaiming the proceeds of trust funds.

It seems unusual that a court would reach the result that all the assets of an insolvent bank, which came into the hands of the commissioner, are derived from the proceeds of trust funds, which means that no assets, acquired with its capital or the funds its depositors brought to it, remain. When that condition is found, there is nothing for the *cestuis* of trust funds to do but prorate. The general creditors get nothing. Such a situation is, perhaps, partly due to the fact that some of the recent decisions of our courts have allowed preferences on fictitious rather than actual increases of assets, and have indulged in extreme presumptions to aid preference claimants. Recent decisions of this court have refused to give effect to mere fictions but have adhered to the fundamental principles which are necessary to produce justice between general and priority claimants. [See Ralls County v. Commissioner of Finance, 334 Mo. 167, 66 S. W. (2d) 115;

558

Mitchell v. Bank of Ava, 333 Mo. 960, 65 S. W. (2d) 99; Boone County v. Cantley, 330 Mo. 911, 51 S. W. (2d) 56; Mann v. Bank of Greenfield, 329 Mo. 862, 46 S. W. (2d) 874; see, also, discussion in Bank of Republic v. Republic State Bank, 328 Mo. 848, 42 S. W. (2d) 27.] Section 3152, Revised Statutes 1929, is also cited but it has no application here. [State ex rel. Becker v. Farmers' Exchange Bank, 331 Mo. 689, 56 S. W. (2d) 129.] If it did, it is purely a lien statute and could apply only to the general assets of the bank (here there may be none) which would otherwise go to pay its creditors, and not to assets acquired with proceeds of trust funds which the bank did not own. The court has already granted a greater right than could be obtained under this statute.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.